1  James C. Bastian, Jr. - Bar No. 175415
   Melissa Davis Lowe – Bar No. 245521
2  **SHULMAN HODGES & BASTIAN LLP**
   100 Spectrum Center Drive, Suite 600
3  Irvine, California 92618
   Telephone:    (949) 340-3400
4  Facsimile:    (949) 340-3000
   E-mail:       jbastian@shbllp.com; mlowe@shbllp.com
5
   Attorneys for Petitioning Creditors D&A Daily
6  Mortgage Fund III, L.P.;D&A Semi-Annual Mortgage
   Fund III, L.P.; and D&A Intermediate-Term Mortgage Fund III, L.P.
7

8              **UNITED STATES BANKRUPTCY COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

10

11 | In re | Case No.  8:15-bk-10721-SC |

12 | **AMERICAN SPECTRUM REALTY, INC.,** | Chapter  11 |

13 | Debtor. | **PETITIONING CREDITORS'** |

14 | | **EMERGENCY MOTION FOR A COURT ORDER APPOINTING AN INTERIM CHAPTER 11 TRUSTEE; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF MELISSA DAVIS LOWE IN SUPPORT THEREOF** |

15

16

17 **[Request for Judicial Notice and additional Declarations filed concurrently herewith]**

18

19 **Hearing:**
   Date:   February 19, 2015
20 Time:   2:00 p.m.
   Place: 5C
21         Ronald Reagan Federal Building
           and United States Courthouse
22         411 West Fourth Street
           Santa Ana, California 92701
23

24

25

26

27

28

i

Z:\A-B\American Spectrum Realty\Pld\Appoint Trustee Mtn_v2_Clean.doc
4936-000/56

1

# TABLE OF CONTENTS

Page

2

3   **INTRODUCTION AND NEED FOR EMERGENCY HEARING**................................................ 1

4   **I. BACKGROUND INFORMATION** ..................................................................................... 4

5   A.   COMMENCEMENT OF THE BANKRUPTCY CASE ..................................................... 4

6   B.   BACKGROUND OF THE DEBTOR AND THE PETITIONING CREDITORS..................... 4

7   C.   THE DEBTOR'S SEC REPORTING AND LIQUIDITY ISSUES ..................................... 7

8   D.   DEBTOR'S ATTEMPTS TO AVOID FORECLOSURE..................................................... 8

9   E.   CARDEN'S SELF-DEALING AND MISAPPROPRIATION OF FUNDS ............................ 8

10  **II. MEMORANDUM OF POINTS AND AUTHORITIES** ........................................................ 9

11  A.   THE COURT IS AUTHORIZED TO APPOINT AN INTERIM CHAPTER 11 TRUSTEE........ 9

12  B.   THE APPOINTMENT OF AN INTERIM TRUSTEE IS NECESSARY TO STOP THE GROSS

13  MISMANAGEMENT OF THE DEBTOR BY CURRENT MANAGEMENT. ................................. 10

14  *1.       Debtor's Failure to Meet its Commitments and Respond to Petitioning Creditors'*

15  *Requests* 10

16  *2.       The Debtor is Filing Bankruptcy Petitions in Order to Avoid Foreclosure* ................ 11

17  C.   THE APPOINTMENT OF AN INTERIM TRUSTEE IS NECESSARY TO PRESERVE THE PROPERTY OF

18  THE ESTATE AND PREVENT LOSS TO PROPERTY OF THE ESTATE. ................................. 12

19  *1.       Debtor's  Principal is Diverting Assets to Himself* ......................................... 12

20  *2.       Debtor's Liquidity Issues* ............................................................................. 12

21  D.   A HEARING ON THE MOTION ON AN EMERGENCY BASIS IS APPROPRIATE................ 13

22  **III. CONCLUSION** ............................................................................................................ 15

23  **DECLARATION OF MELISSA DAVIS LOWE** ....................................................................... 16

24

25

26

27

28

i

**SHULMAN HODGES &**
**BASTIAN LLP**
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Z:\A-B\American Spectrum Realty\Pld\Appoint Trustee Mtn_v2_Clean.doc
4936-000/56

1

# TABLE OF AUTHORITIES

2

## <u>CASES</u>

3  *In re Petralex Stainless, Ltd.*, 78 B.R. 738 (Bankr. E.D. Pa. 1987) ................................................ 10

4  *In re Professional Accountants Referral Services, Inc.,* 142 B.R. 424 (Bankr. Colo.
5       1992) ................................................................................................................................ 10

6

## <u>STATUTES</u>

7  Bankruptcy Code Section 1104(a) ................................................................................................ 9

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR AND ITS COUNSEL AND ALL INTERESTED PARTIES:**

The Petitioning Creditors of In re American Spectrum Realty, Inc. ("Debtor") hereby file this Emergency Motion for a Court Order Appointing an Interim Chapter 11 Trustee ("Motion") as follows:

### INTRODUCTION AND NEED FOR EMERGENCY HEARING

The involuntary petition which commenced this case was necessitated by the Debtor's admitted failure to pay debts as they have come due, including substantial sums owed to Petitioning Creditors, the Debtor's overall insolvency, numerous pending lawsuits, judgments and foreclosure proceedings against the Debtor and its subsidiaries, serious concerns raised about the deteriorating financial condition of the Debtor, the gross mismanagement, including but not limited to issues of self-dealing, commingling of assets, and misappropriations by the Debtor's President and CEO, the Debtor's failure to meet SEC reporting requirements, and the Debtor's failure to call a special meeting of the Series B shareholders to replace management despite the Debtor's duty and the Petitioning Creditors' demand to do so.

The following is a brief summary of the various issues that are of tremendous concern to the Petitioning Creditors and which warrant the immediate appointment of a Chapter 11 trustee:

1.      The Debtor has failed and refused to call a special meeting of the Series B shareholders to appoint preferred directors despite the Debtor's requirement to do so under the Articles Supplementary (defined below) and Petitioning Creditors' demand made two weeks ago. Specifically, the Petitioning Creditors bargained for the ability to appoint new directors in the event the Debtor failed to make payments due and owing and otherwise defaulted under the terms of their agreement.  The Debtor defaulted under the Articles Supplementary by not making a dividend payment on December 1, 2014 or January 1, 2015 and not curing such defaults within thirty days.  On January 30, 2015, the Petitioning Creditors sent a written demand to the Debtor to call a special meeting so the Petitioning Creditors could appoint new directors as the Articles Supplementary provide.  Two weeks have passed and yet the Debtor has failed and refused to

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Z:\A-B\American Spectrum Realty\Pld\Appoint Trustee Mtn_v2_Clean.doc
4936-000/56

1    respond to the Petitioning Creditors' demand other than to advise that not only does the Debtor

2    not have sufficient funds to pay sums due and owing, but it also cannot meet its regular monthly

3    operating expenses.  The Debtor's response raises very serious concerns about the operations and

4    management of the Debtor.

5    　　　　2.　　　Petitioning Creditors have reason to believe the Debtor's President and Chief

6    Executive Officer ("CEO"), William J. Carden ("Carden"), is misappropriating funds,

7    improperly commingling assets, and engaging in improper self-dealing.  For example, the

8    Petitioning Creditors have been advised that Carden paid himself $400,000 from the sale of one

9    of the Debtor's managed properties which should have been distributed to investors.  When

10   confronted, Carden apparently refused to answer any questions regarding why he received the

11   funds and did not pay investors or how the funds have been spent.  The Petitioning Creditors

12   have also been advised that Carden acquired over $1 million worth of shares of the Debtor in

13   April and August 2012 but never paid any compensation to the Debtor for such shares.  Instead,

14   third party witnesses have confirmed that Carden caused to be issued, and executed, two

15   backdated promissory notes to make it appear as if he compensated the Debtor for the shares via

16   promissory note.  To further his personal interest, former employees have testified that Carden

17   charges large amounts of his personal living expenses to his company credit card.  Carden is

18   clearly acting in his own best interest with absolutely no regard for the good of the Debtor or its

19   investors.  Carden was asked to step down voluntarily but he refused to do so.  A Chapter 11

20   Trustee must be appointed immediately to stop these harmful actions.

21   　　　　3.　　　The Debtor is being grossly mismanaged.  The Debtor has not filed any required

22   SEC filings for 2014, leading the SEC to issue multiple notices of non-compliance.  The Debtor

23   needs a substantial amount of cash in order to complete its required SEC filings but does not

24   have the funds necessary to do so.  The most recent SEC filings for 2013 admit that the Debtor is

25   woefully insolvent, showing a consolidated net loss in 2012 of $1.8 million and in 2013 of $15.2

26   million.  The Debtor's auditors (who resigned in November 2014) raise serious concerns about

27   the Debtor's ability to continue as a going concern due to liquidity issues.  Without information

28   for 2014, the Petitioning Creditors and other investors and creditors are left to speculate as to the

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Z:\A-B\American Spectrum Realty\Pld\Appoint Trustee Mtn_v2_Clean.doc
4936-000/56

1   Debtor's viability but have reason to believe the Debtor's finances have continued to deteriorate

2   since 2013.

3       4.    Based on an expert opinion provided by Charles J. McLaughlin, the financial

4   condition and solvency of the Debtor has been rapidly declining over the last three years and

5   there can be no question that it is woefully insolvent at this time.   These conditions were brought

6   on by management which diverted necessary working capital to non-critical applications, often

7   to the personal expenditures of Carden. This resulted in a declining asset base which materially

8   reduced operating margins at the property level but at the same time, administrative expenses

9   and accounts payable continued to increase and operating losses have increased. High leverage

10   contributed to the problem resulting in multiple properties being lost to foreclosure.  Given the

11   Debtor's current cash flow position, it appears it is unable to maintain the debt service on its

12   properties and could lose additional properties to foreclosure in the near future.  The Debtor is in

13   a classic debt spiral, having to sell off better assets to raise working capital while retaining

14   poorer assets. Current management has thwarted all efforts to recapitalize the Debtor in an

15   attempt to retain control while the asset base and operating margin has been materially reduced.

16       5.    The Debtor has been named in numerous lawsuits alleging fraud in many

17   instances and claiming almost $4 million due by the Debtor to the plaintiffs therein.  The Debtor

18   has already suffered judgments against it in three cases.  Litigating these matters will no doubt be

19   expensive not to mention the strain on the Debtor's finances if it suffers additional judgments.

20       6.    The Debtor is improperly commingling monies among the Debtor's managed

21   properties and is taking management fees in advance from all properties.

22       7.    The Debtor has failed to keep accurate accounting records and has employed three

23   different accounting firms in four years.  The general ledger has been out of balance since at least

24   February 22, 2014, a budget had not been completed for 2014 by April 1, 2014, and the account

25   for the American Express card used by Carden has not been reconciled since 2011.

26       For all of these reasons which will be discussed in greater detail below, this Court must

27   immediately appoint an interim Chapter 11 trustee pending an order for relief in this case.

28   ///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

3

Z:\A-B\American Spectrum Realty\Pld\Appoint Trustee Mtn_v2_Clean.doc
4936-000/56

# I.    BACKGROUND INFORMATION

## A.    Commencement of the Bankruptcy Case

1.    On February 13, 2015, an involuntary chapter 11 petition was filed against the Debtor by Petitioning Creditors D&A Daily Mortgage Fund III, L.P., D&A Semi-Annual Mortgage Fund III, L.P., and D&A Intermediate-Term Mortgage Fund III, L.P. (collectively, the "Petitioning Creditors").

## B.    Background of the Debtor and the Petitioning Creditors

2.    The Debtor was formed in 2000 and began publicly trading on the New York Stock Exchange in 2001.  The Debtor is a real estate investor and operates primarily through American Spectrum Realty Operating Partnership, LP, of which the Debtor is the sole general partner and holds 94% of the limited partnership interests.  The Debtor acquires properties, either directly or through its subsidiaries, which require operational attention, physical improvement or capital restructuring.  The Debtor holds a wide range of property types, including industrial property, commercial office buildings, single family residences, and others throughout fifteen states.  The properties are held either by the Debtor or through an entity in which it has a controlling interest or is the beneficiary of a variable interest entity ("VIE").  As of December 31, 2013, the Debtor owned approximately thirty properties, twenty additional properties through VIEs, and manages another thirty properties owned by a third party.

3.    The Debtor reports its finances on a consolidated basis, consolidated with its VIEs and other subsidiaries. The Debtor's consolidated financials for December 31, 2013 show total assets of nearly $400 million and total revenues of over $42 million.  Unfortunately, the Debtor had a net loss of over $14 million in 2013 and serious cash flow issues with only $112,000 in cash at the end of 2013.   In 2013 alone, the Debtor lost three properties to foreclosure.  Despite this, it increased its accounts payable from $7.458 million in 2012 to $8.868 million in 2013.

4.    In or about December 2013, the Petitioning Creditors and the Debtor entered into an agreement whereby the Petitioning Creditors contributed a real estate portfolio of 19 properties valued at approximately $84.8 million, which included the assumption of approximately $17.2 million of debt, to American Spectrum Dunham Properties, LLC, an

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Z:\A-B\American Spectrum Realty\Pld\Appoint Trustee Mtn_v2_Clean.doc
4936-000/56

affiliate of the Debtor, in exchange for the Debtor issuing to the Petitioning Creditors approximately $67.5 million worth of 8% Cumulative Preferred Stock, Series B.  The terms of the 8% Cumulative Preferred Stock, Series B, are set forth in the "Articles Supplementary," a true and correct copy of which is attached to the Declaration of Jeffrey Dunham ("Dunham Decl.") as **Exhibit "16."**

5.     In or about June 2014, the Petitioning Creditors and the Debtor entered into a separate agreement whereby the Petitioning Creditors agreed to surrender approximately $47.4 million dollars' worth of 8% Cumulative Preferred Stock, Series B, in exchange for a return of 14 of the properties contributed by Petitioning Creditors to the Debtor.   Following this transaction, the Petitioning Creditors owned approximately $20 million dollars in 8% Cumulative Preferred Stock, Series B.  *See*, Dunham Decl. ¶4.

6.     The Articles Supplementary at Section 3(n)(v) provide, in pertinent part, that the following constitutes a default thereunder: The Debtor fails to pay in full in cash any dividend on any applicable Dividend Payment Date (as defined under the Articles Supplementary) at the Preferred Distribution Rate (regardless of whether such dividend has been authorized by the Board of Directors ("Board") and declared by the Debtor or whether the Debtor has legally available funds for the payment of such dividend) and fails to cure such breach within thirty days of the applicable Dividend Payment Date.

7.     Under Section 3(k) of the Articles Supplementary, dividend payments are due on the first day of each calendar month.  On each of December 1, 2014 and January 1, 2015, dividend payments in the amount of $66,904.14 plus an additional default amount of $183,986.37 became due to the Petitioning Creditors.  The Debtor did not make either payment as required.  The Debtor did not cure this breach within thirty days either, i.e., January 1, 2015 and February 1, 2015. *See*, Dunham Decl. ¶7.

8.     Section 8(c)(i) of the Articles Supplementary provides that in the event of default where dividends on any shares of Series B have been in arrears by more than sixty days following the applicable Dividend Payment Date, the holders of the shares of the Series B (i.e.,

**SHULMAN HODGES &
BASTIAN LLP**
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Z:\A-B\American Spectrum Realty\Pld\Appoint Trustee Mtn_v2_Clean.doc
4936-000/56

the Petitioning Creditors) shall be entitled to vote for the election of a number of directors of the Debtor constituting a majority of the Board of Directors ("Preferred Directors").

9.      Section 8(c)(iii) of the Articles Supplementary further provides that once the Series B shareholders' voting rights have vested pursuant to Section 8(c)(i) and upon written request of holders of record of at least 10% of the outstanding shares of Series B, a proper officer of the Debtor shall call, or cause to be called, a special meeting of the Series B shareholders by mailing, or causing to be mailed, to such holders a notice of such special meeting to be held between ten and twenty days after the date such notice is given.

10.     On January 30, 2015, the Petitioning Creditors submitted a written request to the Board for a special meeting of the Series B shareholders to appoint the Preferred Directors as provided under the Articles Supplementary.  A true and correct copy of the written request is attached to the Dunham Decl. as **Exhibit "17."**  The Petitioning Creditors have not received notice from any of the Debtor's officers or the Board that a special meeting of the holders of Series B has been called for purposes of electing and appointing the Preferred Directors.  *See*, Dunham Decl. ¶10.

11.     On February 10, 2015, Jeffrey Dunham had a call with Carden and Patrick Barrett, one of the Debtor's Directors. Based on that discussion, it appears the Debtor's cash flow is woefully inadequate to meet its monthly obligations, including payroll, and to maintain operations.  On February 12, 2015, Mr. Dunham again spoke to Carden and Barrett and asked them to allow the Petitioning Creditors to appoint the Preferred Directors as provided for in the Articles Supplementary.  They refused.  *See,* Dunham Decl. ¶11-14.

12.     On February 12, 2015, the Debtor filed a Form 8-K with the SEC which discusses the Debtor's default to the Petitioning Creditors.  A true and correct copy of the February 12, 2015 8-K is attached to the RJN as **Exhibit "6."**  The Debtor acknowledges the debt owed to the Petitioning Creditors and admits that the default "is related to the Company's lack of funds needed to pay the maturing obligations as they come due."

///

///

**SHULMAN HODGES &
BASTIAN LLP**
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6

Z:\A-B\American Spectrum Realty\Pld\Appoint Trustee Mtn_v2_Clean.doc
4936-000/56

**C.    The Debtor's SEC Reporting and Liquidity Issues**

13.    The Debtor has not filed any required SEC reports for 2014 despite notices of non compliance from the NYSE MKT Exchange. *See*, pg. 6 of the Debtor's 2013 10-K, a true and correct copy of which is attached to the Request for Judicial Notice ("RJN") as **Exhibit "1."** In fact, the last report filed by the Debtor is its 10-K for the year ending December 31, 2013.  True and correct copies of the Debtor's 10-Ks for the year ending December 31, 2012 and December 31, 2011 are attached to the RJN as **Exhibits "2" and "3,"** respectively.

14.    As noted by the Debtor's accountants in the Debtor's 2013 10-K, the Debtor has major liquidity concerns.  The Debtor has "recurring losses from continuing operations and relative low levels of cash and cash equivalents.  These conditions raise substantial doubt about its ability to continue as a going concern" and that the liquidity issues "create uncertainty about the [Debtor's] ability to meet its ongoing obligations in the normal course of business without the sale of real estate assets." *See*, pg. 34, 43 of the 10-K.  *See also*, a true and correct copy of the Debtor's 8-K released on November 11, 2014 discussing the resignation of the accountants which is attached to the RJN as **Exhibit "4."**

15.    The Debtor notes that it has recognized losses for both 2012 and 2013 and that it "cannot assure that [it] can achieve or sustain profitability on a quarterly or annual basis in the future." *See*, page 7 of the 10-K.  The financial statements are clear that the losses in 2013 are substantially greater than in 2012.  Consolidated net loss for 2012 was $1.8 million whereas it was $15.2 million in 2013. *See*, pg. 32 of the 10-K.  As to the Debtor, it reported net loss of $13.769 million in 2013 versus a net income of $1.414 million in 2012. *See*, pg. 36 of the 10-K.

16.    Despite the Debtor already admitting to losses in the most recent years, the Debtor's financials are overstated in many instances.  For example, the Debtor manages a number of individual properties in which it owns less than a 1% financial interest, or in many cases, no financial interest. Yet it consolidates those properties based on the theory that the management contract gives it control over the partnership that owns the properties. This has the impact of materially overstating the Debtor's revenues, cash flows, and balance sheet.  After factoring out the improperly consolidated entities, the Debtor has a negative net worth of $11.5

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1  million, no cash, and very high leverage.  *See*, pg. 11 of the 10-K.  After deducting VIE cash

2  from the Debtor's total cash for 2013, the Debtor only had $112,000 in cash for its own

3  ownership interests.  *See*, pg. 35 of the 10-K.

4    17.    The Debtor's insolvency and suffering finances is further highlighted by the

5  multiple recent bankruptcy filings by subsidiaries of the Debtor.  *See,* pg. 31, 67 of the 10-K.

6    18.    The Debtor is also involved in numerous litigation matters filed against it which

7  could have a significant impact on the Debtor's finances if it is found liable and is required to

8  pay judgment amounts or settlement amounts.  *See,* pages 14-16 of the 10-K.

9  **D.    Debtor's Attempts to Avoid Foreclosure**

10    19.    On or about January 28, 2015, Carden executed on behalf of American Spectrum

11  Dunham Properties, LLC a Quitclaim Deed transferring the real property located at 3600 N.

12  Verdugo Road, Glendale, CA ("Verdugo Property") to Verdugo, LLC ("Verdugo").  A true and

13  correct copy of the Quitclaim Deed is attached to the RJN as **Exhibit "7."**

14    20.    On February 12, 2015, Verdugo filed a Chapter 11 bankruptcy petition in the

15  United States Bankruptcy Court for the Central District of California, Santa Ana Division,

16  commencing Case No. 8:15-bk-10701-SC.  A true and correct copy of the bankruptcy petition

17  filed by Verdugo is attached to the RJN as **Exhibit "8."**

18    21.    A trustee's foreclosure sale had been scheduled on the Property for February 13,

19  2015.  Due to the bankruptcy filing and the automatic stay, the foreclosure sale could not go

20  forward.  A true and correct copy of correspondence from counsel for Verdugo advising of the

21  transfer of the Verdugo Property and the bankruptcy filing and advising that the foreclosure sale

22  cannot go forward is attached to the Lowe Declaration as **Exhibit "22."**

23  **E.    Carden's Self-Dealing and Misappropriation of Funds**

24    22.    In 2011, upon the sale of a property owned and managed by affiliates of the

25  Debtor, Carden was paid the sum of $400,000 which was meant to be paid to the investors.

26  Carden has not explained why he was paid these monies or how such monies were spent.  *See,*

27  Eppolito Decl. ¶9; Exhibit "20."

28  ///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Z:\A-B\American Spectrum Realty\Pld\Appoint Trustee Mtn_v2_Clean.doc
4936-000/56

23.     Carden acquired over $1 million worth of shares of the Debtor in April 2012 and August 2012 but never paid any compensation to the Debtor for such shares. Carden asserts the purchase was made by promissory note but the notes relating to the purchase were created after the purchases and backdated. *See,* Eppolito Decl. ¶4, 6, 7; Exhibit "18."

24.     The Debtor admits it pays for personal expenses of Carden saying: "During the years ended December 31, 2013 and 2012, the Debtor made credit card payments to American Express for Mr. Carden's personal expenses totaling $0.05 million and $0.03 million, respectively. Mr. Carden has agreed to repay the Company for personal expenses paid on his behalf. As of December 31, 2013, the net amount due from Mr. Carden after application of the unpaid guarantee fees was $0.06 million, which will continue to be offset by guarantee fees payable to Mr. Carden in 2014." *See,* pg. 52 of the 10-K.

25.     In fact, the personal use of company credit cards was one of the reasons cited by a Board member for his resignation. A true and correct copy of the Debtor's 8-K dated April 1, 2014 which includes the Board member's resignation letter is attached to the RJN as **Exhibit "5."**

## II.      MEMORANDUM OF POINTS AND AUTHORITIES

### A.      The Court is Authorized to Appoint an Interim Chapter 11 Trustee.

Bankruptcy Code Section 1104(a)(1) authorizes the Court to appoint an interim chapter 11 trustee as follows:

> (a)  At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee--
>
> (1)    for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2)  if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

9

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Z:\A-B\American Spectrum Realty\Pld\Appoint Trustee Mtn_v2_Clean.doc
4936-000/56

1   11 U.S.C. §1104(a) (emphasis supplied.)

2   The Bankruptcy Court is authorized to appoint a trustee in an involuntary Chapter 11 case

3   prior to entry of the order for relief where there has been dishonesty and gross mismanagement

4   and there could be serious and irreparable injury without the immediate appointment of an

5   independent trustee.  *See, In re Professional Accountants Referral Services, Inc.,* 142 B.R. 424

6   (Bankr. Colo. 1992); *See also, In re Petralex Stainless, Ltd.*, 78 B.R. 738 (Bankr. E.D. Pa. 1987).

7   As set forth below, the immediate appointment of an interim chapter 11 trustee is

8   absolutely necessary to prevent the further gross mismanagement of the Debtor's current

9   management and to preserve the assets of the Estate from further dissipation and self-dealing by

10   the Debtor's principal and because the Court will most certainly find the Debtor a proper debtor

11   under Section 303.

12   **B.      The Appointment of an Interim Trustee is Necessary to Stop the Gross**

13   **Mismanagement of the Debtor by Current Management.**

14   **1.      *Debtor's Failure to Meet its Commitments and Respond to Petitioning***

15   ***Creditors' Requests***

16   The Debtor's management has failed in its duties not only to the Petitioning Creditors,

17   but also to the SEC.  The Articles Supplementary require the Debtor to call a special meeting of

18   the Series B shareholders upon written request of at least 10% of the outstanding shares of Series

19   B after a default by the Debtor.  The Debtor defaulted in its payments to the Petitioning Creditors

20   by not paying a dividend on December 1, 2014 or January 1, 2015 and not curing such defaults.

21   The Petitioning Creditors, who represent 100% of Series B, sent a written request to the Debtor

22   for a special meeting on January 30, 2015.  To date, two weeks later, the Debtor has failed to call

23   or schedule the special meeting.  To give the Debtor one last try to call the meeting, Mr. Dunham

24   called Carden on February 12, 2015 and asked him to allow the Petitioning Creditors to appoint

25   the Preferred Directors.  Still, the Debtor has refused.  Instead, the Debtor has chosen to ignore

26   the Petitioning Creditors and breach its duties to the Petitioning Creditors pursuant to the terms

27   of the Articles Supplementary.   The Petitioning Creditors' rights to appoint the Preferred

28   Directors as they bargained for when making their investment has matured.  Yet the Debtor's

**SHULMAN HODGES &
BASTIAN LLP**
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1  management refuses to abide by the terms of the Articles Supplementary, which were put in

2  place to protect the Petitioning Creditor's investment in just this situation.

3        In addition, the Debtor has failed to properly report to the SEC for all of 2014 despite the

4  SEC's numerous notices of non-compliance.  Without any reports for 2014, the Petitioning

5  Creditors and other investors and creditors must guess as to the Debtor's financial condition but

6  if past practices have continued, the Debtor's cash flow has likely not improved during the last

7  year.  *See,* Declaration of Charles J. McLaughlin ("McLaughlin Decl.") ¶ 16.

8        Finally, Debtor's management has failed to properly account to the Board and the

9  Debtor's shareholders.  As pointed out in one of the Board member's resignation letters, the

10  Debtor's general ledger has not been balanced since February 2014 and Carden's American

11  Express account has not been reconciled since 2011.  The Debtor also continues to commingle

12  monies across the various property interests.  *See*, Kelley Decl. ¶4.

13        Debtor's current management is wholly inadequate and is mismanaging the Debtor's

14  operations.  The Debtor cannot be given any more time to do what is right in allowing the

15  Petitioning Creditors to appoint Preferred Directors; it clearly has no intention of doing so.  An

16  independent Chapter 11 trustee is needed to ensure the Debtor meets its SEC requirements and

17  duties to its investors and creditors.

18      **2.**     ***The Debtor is Filing Bankruptcy Petitions in Order to Avoid Foreclosure***

19        The Debtor's inability to service the debt on its properties has led to the loss of assets.  In

20  order to avoid the foreclosure of property, the Debtor has chosen now to transfer property to a

21  separate entity and then file bankruptcy for that entity in apparent bad faith.

22        For example, on or about January 28, 2015, Carden executed on behalf of American

23  Spectrum Dunham Properties, LLC a Quitclaim Deed transferring the Verdugo Property to

24  Verdugo.  Verdugo then proceeded to file a bare bones Chapter 11 bankruptcy petition on

25  February 12, 2015, just one day before a foreclosure sale was scheduled to occur on the Verdugo

26  Property.  The transfer of the Verdugo Property and the bankruptcy filing by Verdugo appears to

27  have been done in bad faith in order to avoid the sale of the Verdugo Property.

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Z:\A-B\American Spectrum Realty\Pld\Appoint Trustee Mtn_v2_Clean.doc
4936-000/56

1   The Debtor's current management is not properly managing the Debtor's finances and

2   not properly preserving the Petitioning Creditors' investment.  The appointment of a chapter 11

3   trustee is in the best interest of the Debtor and its creditors and investors.

4   **C.   The Appointment of an Interim Trustee is Necessary to Preserve the Property of the**

5   **Estate and Prevent Loss to Property of the Estate.**

6   A trustee must be appointed also to avoid the further loss of assets and to protect the

7   interests of the Debtor's creditors and investors.

8   **1.   Debtor's Principal is Diverting Assets to Himself**

9   As detailed in the declarations filed with the Motion, Carden cannot be trusted to

10  preserve the assets of the Debtor.  He paid himself $400,000 from the sale of the Punta Gorda

11  property instead of distributing the funds to the investors with no explanation for why he did this

12  or how the funds have been spent.  He also "purchased" over $1 million of stock in the Debtor

13  without compensating the Debtor for the shares.   After the fact, Carden documented the

14  transactions with backdated promissory notes because as the Debtor's Chief Accounting Officer

15  stated, they "might get in trouble."   Finally, he continues to use the Debtor's credit card for

16  personal expenses which the Debtor has not reconciled since 2011.

17  Carden's actions raise serious issues regarding potential breaches of fiduciary duty and

18  violations of SEC regulations and federal law including: (i) 18 U.S.C. § 1348 (securities fraud),

19  (ii) a rule or regulation of the SEC, or (iii) a provision of federal law relating to fraud against

20  shareholders.

21  Clearly, Carden is acting for his own self-interest with no regard for the good of the

22  company or its investors or creditors.  An independent third party fiduciary must be appointed to

23  avoid the further diminution of assets and harm to the Debtor's creditors and investors.

24  **2.   Debtor's Liquidity Issues**

25  The financial condition and solvency of the Debtor has been rapidly declining over the

26  last three years and there can be no question that it is woefully insolvent at this time.  *See,*

27  McLaughlin Decl. ¶11.  There can be no question that the Debtor is insolvent and will ultimately

28  be found to be a proper involuntary debtor under Section 303.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Z:\A-B\American Spectrum Realty\Pld\Appoint Trustee Mtn_v2_Clean.doc
4936-000/56

1    The Debtor notes its losses for 2012 and 2013 in its 2013 10-K.  Its accountants also

2   discuss the Debtor's liquidity issues and raise serious concerns about the Debtor's ability to

3   continue as a going concern.  The Debtor's assets base has declined over the last three years but

4   yet, its operating expenses and accounts payable have increased.

5    Despite the Debtor already admitting to losses in the most recent years, the Debtor's

6   financials are overstated in many instances.  For example, the Debtor manages a number of

7   individual properties in which it owns less than a 1% financial interest, or in many cases, no

8   financial interest. Yet it consolidates those properties based on the theory that the management

9   contract gives it control over the partnership that owns the properties. This has the impact of

10  materially overstating the Debtor's revenues, cash flows, size of balance sheet, etc.  *See,*

11  McLaughlin Decl. 12.  After factoring out the improperly consolidated entities, the Debtor has a

12  negative net worth of $11.5 million, no cash, and very high leverage.  *See*, pg. 11 of the 10-K.

13  After deducting VIE cash from the Debtor's total cash for 2013, the Debtor only had $112,000 in

14  cash for its own ownership interests.  *See,* pg. 35 of the 10-K.

15    Moreover, fifteen months have passed since the last financial statements prepared by the

16  Debtor and if past practices have continued, the Debtor's finances have continued to deteriorate.

17  *See,* McLaughlin Decl. 16.  The Debtor's auditors resigned in November 2014 concurrently with

18  the filing of the Debtor's 2013 10-K, a sure sign that the financial condition has not improved.

19  Had the auditors believed the Debtor's financial condition was improving, they would not have

20  resigned just a few months ago.  *See,* McLaughlin Decl. 19.

21    For all these reasons, the Debtor's current management appears unable to put together a

22  plan to return the Debtor to profitability and must be replaced or controlled by an independent

23  third party fiduciary.

24  **D.    A Hearing on the Motion on an Emergency Basis is Appropriate**

25    Local Bankruptcy Rule 9075-1(a) provides for emergency motions to be heard on less

26  than 48 hours notice.  LBR 9075-1(a)(2)(B) states that the request for an emergency hearing

27  "may be granted if the party shows cause why a hearing is needed within 48 hours, and why the

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Z:\A-B\American Spectrum Realty\Pld\Appoint Trustee Mtn_v2_Clean.doc
4936-000/56

1   court should set a hearing before the motion is filed and before a declaration has been filed

2   setting forth the need for a hearing on less than 48 hours notice."

3        Here, emergency relief is necessary in order to preserve the Petitioning Creditors'

4   bargained for rights to appoint the Preferred Directors before additional assets are lost and the

5   Petitioning Creditors' investment is further harmed.  The Petitioning Creditors gave the Debtor

6   two weeks to respond to their demand to call a special meeting to appoint the Preferred Directors

7   but the Debtor has failed to do so.  The reason for this provision in the Articles Supplementary is

8   to protect the Petitioning Creditors' investment in case the Debtor was unable to meet its

9   obligations.   The Petitioning Creditors' investment is at risk each day current management

10   continues.  Since the Debtor will not allow the Petitioning Creditors to appoint the Preferred

11   Directors as provided for under the Articles Supplementary, an independent third party must be

12   appointed by this Court to do so.

13        In addition, the Debtor has very recently transferred property to a new entity  and then

14   filed a bankruptcy petition for the transferee in bad faith simply to avoid foreclosure.  This

15   cannot continue but there is no guarantee the Debtor will cease doing so without the appointment

16   of an independent trustee.

17        Further, as discussed above, the Debtor's principal is diverting assets away from the

18   Debtor and appears to be running the Debtor into the ground.  Management is clearly unable to

19   properly handle the Debtor's operations, both in terms of the Debtor's severely declining

20   financial position and by failing to properly report to the SEC or the Board.  The Debtor's asset

21   base has decreased but its operating expenses, accounts payable, and ultimately its net losses

22   have increased.  If an Chapter 11 trustee is not appointed, the Debtor's financial position will

23   continue to deteriorate, all to the detriment of the Debtor's creditors and investors.   The

24   Petitioning Creditors are gravely concerned about the Debtor's declining cash position and

25   believe a Chapter 11 trustee is desperately needed in order to call a special meeting to appoint

26   the Preferred Directors and avoid the further loss of assets.

27   ///

28   ///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Z:\A-B\American Spectrum Realty\Pld\Appoint Trustee Mtn_v2_Clean.doc
4936-000/56

### III.    CONCLUSION

Based on the foregoing, the Petitioning Creditors respectfully request that an interim Chapter 11 trustee be immediately appointed, and for such other and further relief as the Court deems just and proper.

**SHULMAN HODGES & BASTIAN LLP**

Dated: February 13, 2015

/s/ Melissa Davis Lowe

James C. Bastian, Jr.
Melissa Davis Lowe
Counsel to Petitioning Creditors

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Z:\A-B\American Spectrum Realty\Pld\Appoint Trustee Mtn_v2_Clean.doc
4936-000/56

# DECLARATION

## DECLARATION OF MELISSA DAVIS LOWE

I, Melissa Davis Lowe, declare as follows:

1.      I am an attorney duly licensed to practice before this Court.  I am an associate with the law firm of Shulman Hodges & Bastian LLP and one of the attorneys primarily responsible for the representation of D&A Daily Mortgage Fund III, L.P., D&A Semi-Annual Mortgage Fund III, L.P.; and D&A Intermediate-Term Mortgage Fund III, L.P., the Petitioning Creditors herein.  The following facts are within my personal knowledge and if called to testify, I could and would competently testify thereto.

2.      I make this Declaration in support of the Petitioning Creditors' motion to appoint an interim Chapter 11 trustee ("Motion").  Unless otherwise noted, capitalized terms herein have the meaning as set forth in the Motion.

3.      On February 13, 2015, my office caused to be filed an involuntary chapter 11 petition was filed against the Debtor by the Petitioning Creditors.

4.      In further of our representation, I have reviewed a number of public documents including SEC filings and lawsuits related to the Debtor which I or members of my staff downloaded from public databases.

5.      On February 6, 2015, I visited the website www.sec.gov/edgar.shtml and accessed the SEC filings of the Debtor.  The website showed the last 10-K filed by the Debtor to be for the year ending December 31, 2013.  I pulled the 2013 10-K, 2012 10-K, 2011 10-K, November 14, 2014 8-K, April 7, 2014 8-K, and February 12, 2015 8-K directly from the website, true and correct copies of which are attached to the RJN as **Exhibits "1," through "6,"** respectively.

6.      On February 12, 2015, Verdugo filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Central District of California, Santa Ana Division, commencing Case No. 8:15-bk-10701-SC.  A true and correct copy of the bankruptcy petition filed by Verdugo is attached to the RJN as **Exhibit "8."**

///

///

///

**SHULMAN HODGES &**
**BASTIAN LLP**
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Z:\A-B\American Spectrum Realty\Pld\Appoint Trustee Mtn_v2_Clean.doc
4936-000/56

7.        On February 12, 2015, Joseph Kelly, General Counsel to the Petitioning Creditors, provided my office a letter from counsel to Verdugo advising of the transfer of the Verdugo Property and the bankruptcy filing and advising that the foreclosure sale cannot go forward.  A true and correct of the letter is attached hereto as **Exhibit "22."**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Irvine, California on February 13, 2015

      /s/ Melissa Davis Lowe
Melissa Davis Lowe

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Z:\A-B\American Spectrum Realty\Pld\Appoint Trustee Mtn_v2_Clean.doc
4936-000/56

**Exhibit "22"**



# RINGSTAD LLP
# & SANDERS
### ATTORNEYS AT LAW

**TODD C. RINGSTAD**
TODD@RINGSTADLAW.COM

February 12, 2015

<u>VIA ELECTRONIC MAIL</u>

First American Title Ins. Co.
4380 La Jolla Village Drive,
Suite 110
San Diego, CA 92122
*dbark@firstam.com*
*acannon@firstam.com*

Dunham Mortgage Funds
Attn: Liz Tuquero
10251 Vista Sorrento Parkway, Suite 200
San Diego, CA 92121
*liz.tuquero@dunham.com*

      Re:  Trustee's Sale No. 694494,
           3600 North Verdugo Road
           Glendale, CA 91208

## <u>NOTICE OF AUTOMATIC STAY</u>

## PLEASE TAKE NOTICE:

This is to inform you that a bankruptcy proceeding has been commenced which affects the property commonly known as 3600 North Verdugo Road, Glendale, CA 91208 (the "Property").

Enclosed herewith is a copy of an execute and notarized Quitclaim Deed by which title to the Property was transferred to Verdugo, LLC.  Also enclosed is a verified copy of a voluntary petition under Chapter 11 of the Bankruptcy Code for Verdugo, LLC filed on February 12, 2015 as Case No. 8:15-bk-10701-SC.

Pursuant to the provisions of 11 U.S.C. Section 362(a), an automatic stay is now in effect that prohibits all persons and entities from enforcing any obligations relating to the Debtor



2030 MAIN STREET, SUITE 1600      IRVINE, CALIFORNIA 92614      (MAIN) 949.851.7450
                                                        (FAX) 949.851.6926

EXHIBIT "22"

February 12, 2015
Page 2

or the Property.  The automatic stay prohibits First American Title and anyone acting on its behalf or in its stead from proceeding with the trustee's sale of the Property currently scheduled for February 13, 2015 at 10:00 a.m. under Trustee's Sale No. 694494.

Knowing violations of the automatic stay constitute contempt of court and subject the offender to sanctions, including damages and attorneys' fees.

Please promptly confirm to the undersigned that the schedule foreclosure sale will not proceed.

Very truly yours

Todd C. Ringstad

TCR/se



EXHIBIT "22"

B1 (Official Form 1) (4/13)

| United States Bankruptcy Court CENTRAL DISTRICT OF CALIFORNIA | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle) VERDUGO, LLC, a Limited Liability Company | Name of Joint Debtor (Spouse)(Last, First, Middle) |
|---|---|
| All Other Names used by the Debtor in the last 8 years (include married, maiden, and trade names) NONE | All Other Names used by the Joint Debtor in the last 8 years (include married, maiden, and trade names). |
| Last four digits of Soc Sec or Individual-Taxpayer I.D. (ITIN) No /Complete EIN (if more than one, state all) 37-1751520 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No /Complete EIN (if more than one, state all) |
| Street Address of Debtor (No & Street, City, and State) 19100 Von Karman Avenue Suite 900 Irvine, CA    ZIPCODE 92612 | Street Address of Joint Debtor (No. & Street, City, and State)    ZIPCODE |
| County of Residence or of the Principal Place of Business    Orange | County of Residence or of the Principal Place of Business. |
| Mailing Address of Debtor (if different from street address) SAME    ZIPCODE | Mailing Address of Joint Debtor (if different from street address)    ZIPCODE |
| Location of Principal Assets of Business Debtor (if different from street address above)    3600 North Verdugo Boulevard, Glendale, CA    ZIPCODE 91208 | |

| Type of Debtor (Form of organization) (Check one box ) ☐ Individual (includes Joint Debtors) *See Exhibit D on page 2 of this form.* ☒ Corporation (includes LLC and LLP) ☐ Partnership ☐ Other (If debtor is not one of the above entities, check this box and state type of entity below) | Nature of Business (Check one box ) ☐ Health Care Business ☒ Single Asset Real Estate as defined in 11 U S C § 101 (51B) ☐ Railroad ☐ Stockbroker ☐ Commodity Broker ☐ Clearing Bank ☐ Other | Chapter of Bankruptcy Code Under Which the Petition is Filed (Check one box) ☐ Chapter 7      ☐ Chapter 15 Petition for Recognition ☐ Chapter 9           of a Foreign Main Proceeding ☒ Chapter 11     ☐ Chapter 15 Petition for Recognition ☐ Chapter 12          of a Foreign Nonmain Proceeding ☐ Chapter 13 |
|---|---|---|
| | | Nature of Debts (Check one box) ☐ Debts are primarily consumer debts, defined   ☒ Debts are primarily in 11 U.S.C. § 101(8) as "incurred by an       business debts individual primarily for a personal, family, or household purpose" |

| Chapter 15 Debtors Country of debtor's center of main interests Each country in which a foreign proceeding by, regarding, or against debtor is pending. | Tax-Exempt Entity (Check box, if applicable ) ☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code) | Chapter 11 Debtors: Check one box: ☐ Debtor is a small business as defined in 11 U S C § 101(51D) ☒ Debtor is not a small business debtor as defined in 11 U S C § 101(51D) Check if: ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 *amount subject to adjustment on 4-01-16 and every three years thereafter)* |
|---|---|---|
| Filing Fee (Check one box) ☒ Full Filing Fee attached ☐ Filing Fee to be paid in installments (applicable to individuals only) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments Rule 1006(b). See Official Form 3A ☐ Filing Fee waiver requested (applicable to chapter 7 individuals only) Must attach signed application for the court's consideration See Official Form 3B. | | Check all applicable boxes: ☐ A plan is being filed with this petition ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U S C § 1126(b) |

| Statistical/Administrative Information ☒ Debtor estimates that funds will be available for distribution to unsecured creditors ☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors | THIS SPACE IS FOR COURT USE ONLY |
|---|---|

Estimated Number of Creditors

| ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |

Estimated Assets

| ☐ | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

Estimated Liabilities

| ☐ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

EXHIBIT "22"

B1 (Official Form 1) (4/13)                                                                      FORM B1, Page  2

| Voluntary Petition<br>*(This page must be completed and filed in every case)* | Name of Debtor(s)<br>VERDUGO, LLC,<br>a *Limited Liability Company* |
|---|---|

| **All Prior Bankruptcy Cases Filed Within Last 8 Years**       (If more than two, attach additional sheet) |||
|---|---|---|
| Location Where Filed:<br>*NONE* | Case Number: | Date Filed |
| Location Where Filed: | Case Number: | Date Filed |

| **Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor**     (If more than one, attach additional sheet) |||
|---|---|---|
| Name of Debtor<br>*NONE* | Case Number: | Date Filed |
| District | Relationship: | Judge |

| Exhibit A<br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under Chapter 11)<br><br>Exhibit A is attached and made a part of this petition | Exhibit B<br>(To be completed if debtor is an individual whose debts are primarily consumer debts)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, and have explained the relief available under each such chapter  I further certify that I have delivered to the debtor the notice required by 11 U.S.C. §342(b)<br><br>X _____    *2/12/2015*<br>Signature of Attorney for Debtor(s)                Date |
|---|---|

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐  Yes, and exhibit C is attached and made a part of this petition.
☒  No

**Exhibit D**
(To be completed by every individual debtor  If a joint petition is filed, each spouse must complete and attach a separate Exhibit D )

Exhibit D, completed and signed by the debtor, is attached and made part of this petition.

If this is a joint petition

☐  Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box)

☒  Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District

☐  There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District

☐  Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes )

☐  Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following )

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐  Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐  Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐  Debtor certifies that he/she has served the Landlord with this certification (11 U.S.C. § 362(l))

EXHIBIT "22"

B1 (Official Form 1) (4/13)                                                                                              FORM B1, Page 3

| Voluntary Petition | Name of Debtor(s) |
|---|---|
| *(This page must be completed and filed in every case)* | VERDUGO, LLC,<br>a Limited Liability Company |

## Signatures

### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C §342(b)

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition

X _____
Signature of Debtor

X _____
Signature of Joint Debtor

Telephone Number (if not represented by attorney)

_____
Date

### Signature of a Foreign Representative

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C § 1515 are attached.

☐ Pursuant to 11 U.S.C § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
(Signature of Foreign Representative)

_____
(Printed name of Foreign Representative)

_____
(Date)

### Signature of Attorney*

X _____
Signature of Attorney for Debtor(s)

Todd C. Ringstad 97345
Printed Name of Attorney for Debtor(s)

Ringstad & Sanders LLP
Firm Name

2030 Main Street
Address

Suite 1600

Irvine, CA  92614

949 851-7450
Telephone Number

2/12/2015
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests the relief in accordance with the chapter of title 11 United States Code, specified in this petition

VERDUGO, LLC

By:    American Spectrum Dunham Properties, LLC
       Its Sole Member
       By:    American Spectrum Realty Operating Partnership, L.P.,
              Its Sole Member
              By:    American Spectrum Realty, Inc.
                     Its General Partner
                     By: _____
                     James Hurn, Vice President
                     GENERAL COUNSEL

### Signature of Non-Attorney Bankruptcy Petition Preparer

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C §§ 110(b), 110 (h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C § 110(h) setting a maximum fee for services bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C § 110.)

_____
Address

X _____

_____
Date

Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C § 110; 18 U.S.C § 156.*

EXHIBIT "22"

Recording requested by (name):

Matthew Thornton

And when recorded, mail this deed and tax
statements to (name and address):

Matthew Thornton

19100 Von Karman Avenue, Suite 900

Irvine, California 92612

# QUITCLAIM DEED

| | |
|---|---|
| DOCUMENTARY TRANSFER TAX $ 10,175.00 | |
| EXEMPTION (R&T CODE) _____ | |
| EXPLANATION _____ | |
| Signature of Declarant or Agent determining tax | |

APN: 5613-001-034

For a valuable consideration, receipt of which is hereby acknowledged,

American Spectrum Dunham Properties, LLC
(Disclaiming Party(ies))

hereby quitclaim(s) to Verdugo, LLC
(Property Owner(s))

the following real property in the City of Glendale _____, County of

Los Angeles _____, California: (Insert legal description)

EX OF ST LOTS 1 TO 4 AND EX OF STS LOT 5

M B 59-34-36 AND POR LOT 23 TR=1701

Date: 1/28/15

(Signature of declarant)

William J. Carter
(Typed or written name of declarant)

Date: _____

(Signature of declarant)

_____
(Typed or written name of declarant)

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ~~California~~ TEXAS
County of Harris

**NOTARY SEAL**

On 1-28, 2015, before me,
Christopher Burrell, a notary public, personally appeared
William J. Carter, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of
the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature of Notary

CHRISTOPHER BURRELL
Notary Public, State of Texas
My Commission Expires
January 23, 2016

EXHIBIT "22"

## NOTICE OF EXEMPT TRANSACTIONS
## UNDER THE DOCUMENTARY TRANSFER TAX

Following is a list of real estate transactions that are exempt from the documentary Transfer Tax under Los Angeles County's amended Ordinance and State Revenue and Taxation Code Section 11902, et seq. A statement as shown below must appear on the face of all documents to be recorded that are exempt from the tax.

Please contact the Recorder's Office staff at (562) 462-2125 if you have any further questions.

1.      Conveyance Confirming Title in  Grantee
"This conveyance confirms title to the grantee(s) who continue to hold the same interest acquired on Date___, Document No. _____ wherein $_____ Documentary Transfer Tax was paid, R&T 11911."

2.      Conveyance in Dissolution of Marriage
"This conveyance is in dissolution of marriage by one spouse to the other, R&T 11927."

3.      Conveyance to Secure a Debt
"This conveyance is to secure a debt, R&T 11921."

4.      Reconveyance upon Satisfaction of a Debt
"This is a reconveyance of realty upon satisfaction of a debt, R&T  11921."

5.      Conveyances transferring Interests into or out of a Living Trust
"This conveyance transfers an interest into or out of a Living Trust, R&T  11930."

6.      Conveyance Changing Manner in Which Title is Held
"This conveyance changes the manner in which title is held, grantor(s) and grantee(s) remain the same and continue to hold the same proportionate interest, R&T  11911."

7.      Court Ordered Conveyances Not Pursuant to Sale
"This is a court-ordered conveyance or decree that is not pursuant to sale, R&T 11911."

8.      Conveyance Given for No Value
"This is a bonafide gift and the grantor received nothing in return, R & T 11911."

9.      Conveyance to Establish Sole and Separate Property of a Spouse
'This conveyance establishes sole and separate property of a spouse, R&T 11911."

10.     Conveyance to Confirm a Community Property Interest when property was purchased with Community Property Funds
"This conveyance confirms a community property interest, which was purchased with Community Property Funds, R&T 11911."

EXHIBIT "22"

11.     Conveyances to Confirm a Change of Name
"This conveyance confirms a change of name, and the granter and grantee are the same party, R&T 11911."

12.     Conveyances of an Easement or Oil and Gas Lease Where the Consideration and Value is Less Than $100.00
'This is a conveyance of an easement (Oil and Gas Lease) and the consideration and value is less than $100.00, R&T 11911."

13.     Conveyances Where the Liens and Encumbrances Are Equal or More Than the Value of Property, and No Further Consideration is Given
"The value of the property in this conveyance, exclusive of liens and encumbrances  is $100.00 or less, and there is no additional consideration received by the granter, R&T 11911."

14.     Conveyances from a Trustee Under a Land Contract at the Consummation of the Contract
"This is a conveyance of equitable title from a trustee, under a land contract, to the vendee at the consummation of the contract, R&T 11911."

15.     Conveyance from Individual(s)/Legal Entity(ies) to Individual(s)/Legal Entity(ies) Where the Grantors and Grantees Are Comprised of the Same Parties, and Parties Continue to Hold the Same Proportionate Interest. (Exception: Dissolution of a Partnership. R&T 11925[b])
"The granters and the grantees in this conveyance are comprised of the same parties who continue to hold the same proportionate interest in the property, R&T 11925(d)."

EXHIBIT "22"

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**100 Spectrum Center Drive, Suite 600, Irvine, California 92618**

A true and correct copy of the foregoing document entitled (*specify*): **PETITIONING CREDITORS' EMERGENCY MOTION FOR A COURT ORDER APPOINTING AN INTERIM CHAPTER 11 TRUSTEE; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF MELISSA DAVIS LOWE IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ***February 13, 2015***, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**INTERESTED PARTY:** United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) ***Not Applicable***, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ***February 13, 2015***, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

| Judge's Copy – Via Personal Delivery | Alleged Debtor | Alleged Debtor |
|---|---|---|
| Honorable Scott C. Clarkson<br>U.S. Bankruptcy Court<br>411 West Fourth Street<br>Bin beside 5th Floor Elevators<br>Santa Ana, CA 92701 | American Spectrum Realty, Inc.<br>Attn: William J. Carden,<br>Chairman of the Board, CEO and President<br>19100 Von Karman Avenue, Suite 900<br>Irvine, CA 92612 | American Spectrum Realty, Inc.<br>Attn: James Hurn, General Counsel<br>19100 Von Karman Avenue, Suite 900<br>Irvine, CA 92612 |
| **Registered Agent for Service of Process for the Alleged Debtor**<br>American Spectrum Realty, Inc.<br>1267 Willis Street, Suite 200<br>Redding, CA 96001 | | |

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 13, 2015 | Anne Marie Vernon | */s/ Anne Marie Vernon* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**