# FOR PUBLICATION



FILED & ENTERED

NOV 10 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY nbolte      DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – Santa Ana Division

| | |
|---|---|
| In re | Case No. 8:15-bk-10721-SC |
| American Spectrum Realty, Inc., | Chapter 11 |
|     Debtor and Debtor in Possession. | **ORDER AND MEMORANDUM DECISION:**<br>**(1) GRANTING MOTION FOR RELIEF FROM STAY UNDER § 362(d)(1);**<br>**(2) DENYING MOTION TO ENFORCE THE AUTOMATIC STAY, FOR ORDER REQUIRING ACCOUNTING OF FUNDS HELD IN SEGREGATED ACCOUNT, AND FOR PRODUCTION OF DOCUMENTS PURSUANT TO RULE 2004; AND**<br>**(3) GRANTING THE DEBTOR'S EVIDENTIARY OBJECTIONS**<br><br>Date: November 5, 2015<br>Time: 11:00 a.m.<br>Courtroom 5C<br>411 West Fourth Street<br>Santa Ana, CA 92701 |

    Before the Court are two motions—a motion for relief from the automatic stay [Dk. 259][1] ("Motion for Relief from Stay") filed by Movants ASR 2620-2630 Fountainview, LP, Fountain View Park Plaza, LLC, and ASRP Investments, LLC

---

[1] Unless otherwise indicated, all "[Dk. x]" citations refer to the CM/ECF docket for the instant chapter 11 bankruptcy case of American Spectrum Realty, Inc. pending in the U.S. Bankruptcy Court for the Central District of California, Case No. 8:15-bk-10721-SC.

("Plaintiffs") and a joint motion to enforce the automatic stay, for order requiring an accounting of funds held in a segregated account, and for production of documents under Federal Rule of Bankruptcy Procedure ("Rule") 2004 [Dk. 233] ("Motion to Enforce Stay") filed jointly by American Spectrum Realty, Inc. ("Debtor") and non-debtors American Spectrum Realty Operating Partnership L.P. ("ASROP"), American Spectrum Realty Management, LLC ("ASRM"), and ASR 2620-2630 Fountainview GP, LLC ("ASR GP").

These motions came on for hearing on November 5, 2015, at 11:00 a.m. in Courtroom 5C. Lei Lei Wang Ekvall, Esq. appeared on behalf of Plaintiffs and Peter Lianides, Esq. appeared for the Debtor. Other appearances were as noted in the record. As set forth more fully below, and after consideration of the Motion for Relief from Stay and Motion to Enforce Stay, the evidentiary objection filed by the Debtor [Dk. 284] ("Evidentiary Objection"), oral argument of the parties, along with all of the other pleadings and documents filed in this matter and the record as a whole, relief from stay is GRANTED under § 362(d)(1), but only to allow the Texas Action to proceed to judgment. The Plaintiffs may not setoff against the Debtor's counterclaims in the Texas Action without further order of this Court. The Plaintiffs' request for annulment is also GRANTED. The Debtor's Motion to Enforce Stay is DENIED.

## I.    Introduction

The Plaintiffs seek relief from the automatic stay to allow them to proceed to judgment in a lawsuit pending in Harris County, Texas state court ("Texas Action")[2] against the Debtor and 11 other non-debtor defendants ("Non-Debtor Defendants"). The Texas action has been pending in Texas state court for over two years. The Non-Debtor Defendants include ASROP and several former directors of ASR GP. (The Debtor and Non-Debtor Defendants are collectively referred to herein as "Defendants.") Two named defendants in the Texas Action are James Hurn, Esq. and William J. Carden. Mr. Hurn

---

[2] The Texas Action is captioned ASR 2620-2630 FOUNTAINVIEW LP, *et al.* vs. ASR 2620-2630 FOUNTAINVIEW GP LLC, *et a*l., District Court of Harris County, Texas, Docket No. 2013-25806.

is General Counsel and Vice President to the Debtor, and Mr. Carden is the CEO and Chair of the Board of Directors for the Debtor.

The Texas Action arises mainly from a dispute between two groups of limited partners (neither of which is a debtor in the instant bankruptcy) over the distribution of sale proceeds held in an account of a Delaware limited partnership named ASR 2620-2630 Fountainview, LP ("Partnership"). The Partnership was formed in 2010 for the purpose of developing and operating two commercial properties located at 2620 and 2630 Fountain View, Houston, Texas 77057 (collectively "Properties").

The Debtor has provided the following diagram,[3] which sets forth the relevant corporate structure of the Partnership:



On April 26, 2013, the Class A limited partners allegedly removed[4] ASR GP as general partner of the Partnership and replaced it with Fountainview New Partnership

---

[3] This diagram is set forth on page 4 of Debtor's Objection to Motion for Relief [Dk. 268]. In the moving papers, the Plaintiffs assert slightly different, and immaterial, ownership percentages.

("New GP"). At the end of May 2013, the Properties were sold, generating net sale proceeds of approximately $2.9 million, which were placed into a segregated account ("Segregated Account").

On April 30, 2013, the Plaintiffs filed the Texas Action against Defendants for, among other things, fraud, conspiracy, breach of fiduciary duty, breach of Texas Deceptive Trade Practices Act, breach of contract, and breach of guaranty. The Plaintiffs allege, among other things, that the Debtor and ASROP "jointly and severally guarant[eed] the performance of all of [the Old GP]'s and [ASROP]'s obligations, covenants, representations and warranties . . . which run in favor of or benefit the Class A Limited Partners." *See* Motion for Relief from Stay [Dk. 260, page 4, lines 19-22] (citing Partnership Agreement, Exh. 1, pages 58-59). The Debtor, among other defendants, counterclaimed for, among other things, breach of fiduciary duty and breach of contract.[5] The Plaintiffs allege that the Defendants looted the Partnership, and the Debtor, among other defendants, assert that the Plaintiffs breached their fiduciary duties as well as the partnership agreement by failing to disburse the net sale proceeds from the sale of the Properties. ASROP (the Class B Limited Partner and a non-debtor) and ASR GP (also a non-debtor) assert that they are entitled to approximately $1.325 million of sales proceeds in the Segregated Account. Declaration of James Hurn [Dk. 281, ¶9]. The Debtor also alleges that the $1.325 million in sales proceeds, by virtue of its 94% ownership interest in ASROP, "could possibly be considered" property of its bankruptcy estate. *See* Hearing Transcript 11/5/2015 at 11:32 a.m.

On May 10, 2013, the Texas state court entered a four-page order approving the parties' consensual temporary injunction [Dk. 271, Exh. 3] ("Agreed Temporary Injunction Order") with respect to the Segregated Account. The Agreed Temporary

---

[4] The Debtor states that the Class A limited partners "purported to remove" ASR GP as the general partner of the Partnership, which indicates that there may be a dispute as to whether this removal was proper. Objection to Motion for Relief [Dk. 268, page 5, line 4].

[5] It is not clear that all Defendants were parties to the counterclaims in the Texas Action.

4

Injunction was signed by Mr. Hurn, the General Counsel and Vice President of the

Debtor, as the "duly authorized officer and attorney for Defendants [which included the

Debtor]." [Dk. 271, Exh. 3, page 161 of 165]. The Agreed Temporary Injunction Order

contains provisions for certain qualified disbursements to be made from the Segregated

Account and further provides that it "shall expire by its own terms upon the entry of a

Final Judgment on the merits or of any order dismissing all of the claims Plaintiffs have

brought against all of the Defendants." [Dk. 271, Exh. 3].

On February 13, 2015, certain creditors of the Debtor filed an involuntary chapter

11 against the Debtor in the United States Bankruptcy Court for the Central District of

California ("California Bankruptcy"). During this time period, Messrs. Hurn and Carden

were named defendants in the Texas Action, but they also became active in the

California Bankruptcy proceeding. Mr. Hurn knew as early as February 19, 2015, about

the existence of the California Bankruptcy proceeding because he signed a declaration

opposing an emergency motion to appoint a chapter 11 trustee, which was filed in the

California Bankruptcy case. *See* Declaration of James Hurn, Esq. [Dk. 20]. Also, on

February 19, 2015, the Debtor's CEO and Chair of the Board of Directors, Mr. Carden

signed a retainer agreement retaining Todd Ringstad, Esq. as his bankruptcy counsel in

the California Bankruptcy proceeding. *See* Attorney-Client Fee Agreement [Dk. 28

pages 8-17].

On March 16, 2015, Mr. Hurn signed, on behalf of the Debtor, a voluntary

chapter 11 petition later filed in the United States Bankruptcy Court for the Southern

District of Texas ("Texas Bankruptcy"), assigned case number 15-31514. *See* Voluntary

Petition [U.S. Bankruptcy Court, Southern District of Texas, Case No. 15-31514, Dk. 1,

page 4 of 17]. On March 19, 2015, the Debtor's current bankruptcy counsel, Robert

Opera, Esq. of Winthrop Couchot, P.C. "specially appeared" on behalf of the Debtor.

*See* Hearing Transcript 3/19/2015 at 11:18 a.m. Also on March 19, 2015, the Court

transferred the Texas Bankruptcy proceeding to the Central District of California. *See*

Transfer Order [Dk. 48]. On May 1, 2015, the Texas Bankruptcy proceeding was

dismissed. *See* Order [8:15-bk-11397-SC Dk. 57].  An order for relief was entered in the involuntary California Bankruptcy case on May 1, 2015. [Dk. 112].

The Plaintiffs state that they first learned of the Texas Bankruptcy on or about March 20, 2015, not by receiving notice from the Debtor, but by reading a published article that referenced the bankruptcy filings. *See* Motion for Relief [Dk. 260, Lewis Declaration ¶12]. On March 31, 2015, Dax O. Faubus, Esq., the attorney representing defendants Timothy R. Brown and Patrick D. Barrett, filed a "suggestion of bankruptcy" [Dk. 260, Exh. 12] in the Texas Action, which gave notice of the Texas Bankruptcy proceeding, but not the California Bankruptcy proceeding.[6]

Notably, the Debtor was unable to direct the Court to any evidence that the Debtor, represented at the inception of this case by sophisticated and well-respected bankruptcy counsel, had given any notice of the bankruptcy proceedings to the Texas state court. Hearing Transcript 11/5/2015 at 11:23 a.m.

On June 12, 2015, the Texas court issued an order that authorized the Plaintiffs to file a Sixth Amended Petition in the Texas Action, notwithstanding the automatic stay. Order [Dk. 244, Exh. E]. The Texas court ordered that "[the Debtor] can stay in the pleading with the understanding this Court may only assess liability to [the Debtor] unless the stay is lifted."[7] [Dk. 244, Exh. E, page 35]. On June 18, 2015, the Plaintiffs filed their Sixth Amended Petition in the Texas Action.  [Dk. 235, Exh. 1].

---

[6] The records of the Harris County, Texas state court reflect that Dax O. Faubus, Esq. represents defendants Timothy R. Brown and Patrick D. Barrett (former directors of non-debtor ASR GP) in the Texas Action, and that an attorney by the name of Kevin R. Michaels, Esq. represents the Debtor, American Spectrum Realty, Inc., among others. At the November 5, 2015, hearing, bankruptcy counsel for the Debtor, Mr. Lianides, stated that Mr. Michaels is the Debtor's state court counsel in the Texas Action. *See* Hearing Transcript 11/5/2015 at 11:33 a.m.  Mr. Lianides stated that Mr. Michaels was "new counsel" to the Debtor in the Texas Action, but that the Debtor, in fact, had legal representation throughout the over two year litigation in Texas state court. *See* Hearing Transcript 11/5/2015, at 11:33 a.m. Surprisingly, Mr. Michaels was not present and no party present at the November 5, 2015, hearing could answer the Court's rudimentary questions concerning any details with respect to the Texas court's rulings or other aspects of the Texas Action.

[7] This is outside the realm of authority of state courts; however, as a native Texan, this Court is qualified to opine that sometimes they do things "differently" in Texas. *See, e.g.*, *Lyndon B. Johnson v. Coke Stevenson*, 170 F.2d 108 (5th Cir. 1948); *see also* LBJ v. Coke Stevenson: *Lawyering for Control of the Disputed Texas Democratic Party Senatorial Primary Election of 1948*, 31 The Review of Litigation 1 (2012).

The Debtor (the 94% interest-holder in ASROP, a limited partner of the Partnership and a non-debtor) made numerous demands upon the Plaintiffs for an accounting of the Segregated Account (an asset of the Partnership). Those demands included written and oral communications with the Plaintiffs on July 10, 2015, July 21, 2015, July 22, 2015, and finally an ultimatum on August 3, 2015 that Debtor intends to "seek relief" unless the Plaintiffs provided an accounting. *See* Debtor's Opposition [Dk. 268, page 9, lines 12-14].

On August 4, 2015, the Plaintiffs filed an emergency motion to show cause against Robert E. Opera, Esq., of Winthrop Couchot, P.C., the Debtor's California Bankruptcy counsel, for allegedly violating the Agreed Temporary Injunction Order as a result of his efforts in demanding from the Plaintiffs an accounting of the Segregated Account. The Texas court denied the motion to show cause at a hearing held on August 7, 2015.[8]

On August 17, 2015, certain co-defendants (and former directors of ASR GP) in the Texas Action, Timothy R. Brown and Presley E. Werlein III, filed, in the Texas Action, a motion to enforce the automatic stay, in light of the California Bankruptcy proceeding. [Dk. 260, Exh. 15]. The Debtor's Motion to Enforce Stay, of course, was not filed in the California Bankruptcy until late September 2015.

On August 31, 2015, the Texas court entered an order [Dk. 260, Exh. 16] ("Abatement Order") stating that "all of Plaintiff's claims and causes of action in this lawsuit are ABATED pending the bankruptcy of American Spectrum Realty, Inc. in U.S. Bankruptcy Court, Central District of California, Cause No. 8:15-bk-10721-SC."

---

[8] The reasons for the denial are not in the record. The proof of service to the Emergency Motion to Show Cause filed in the Texas Action indicates that Mr. Opera was served on July 30, 2015. *See* [Dk. 278, Exh.5, page 15]. Mr. Opera's firm, Winthrop Couchot, P.C., is well-respected nationwide. Winthrop Couchot, P.C. is well aware of the procedures for obtaining an emergency hearing in this Court. The Debtor has provided no adequate explanation for why the Debtor did not immediately advise this Court about the various postpetition proceedings in the Texas Action. Mr. Lianides's explanation at the November 5, 2015, hearing was that the firm was "too busy." Hearing Transcript 11/5/2015 at 11:48 a.m. This explanation is insufficient and vague.

On October 15, 2015, the Plaintiffs filed the Motion for Relief from Stay [Dk. 259], seeking to proceed to judgment in the Texas Action and to setoff against the Debtor's counterclaims. Motion for Relief [Dk. 260, at pages 24-25].

The Debtor filed an opposition [Dk. 268] ("Debtor's Opposition") to the Motion for Relief, asserting that "cause" does not exist for relief from stay and asking the Court to send the parties to mediation. Mr. Brown, a former director of ASR GP, also filed an opposition [Dk. 274], which largely echoes the Debtor's Opposition. The Debtor's separately-filed Motion to Enforce Stay, seeks a declaratory order that the automatic stay applies to the Non-Debtor Defendants, an accounting of funds held in the Segregated Account, and for production of documents pursuant to Federal Rule of Bankruptcy Procedure ("Rule") 2004. Each side filed various declarations, requests for judicial notice, and replies, as reflected on the docket, including the Debtor's Evidentiary Objection [Dk. 284]. At the request of the Plaintiffs, the Court continued the hearing on the Motion to Enforce Stay to coincide with the hearing on the Motion for Relief because these motions each address the same subject matter.

## A.    Stay Relief

Section 362(d)(1) provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . (1) for cause. . . ." 11 U.S.C. § 362(d)(1). "What constitutes 'cause' for granting relief from the automatic stay is decided on a case-by-case basis." *Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer)*, 405 B.R. 915, 921 (9th Cir. B.A.P. 2009); *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990). "To obtain relief from the automatic stay, the party seeking relief must first establish a prima facie case that 'cause' exists for relief under § 362(d)(1)." *Plumberex*, 311 B.R. at 557 (footnote omitted). "Once a prima facie case has been established, the burden shifts to the debtor to show that relief from the stay is unwarranted." *Id*. "The decision whether to grant or deny stay relief is within the broad discretion of the bankruptcy court." *Id*. at 558;

*Kronemyer*, 405 B.R. at 919 ("The decision of a bankruptcy court to grant relief from the automatic stay under § 362(d) is reviewed for abuse of discretion.").

Among other things, the Plaintiffs seek relief to proceed to judgment in Texas state court, and to setoff of any judgment in the Plaintiffs' favor against any judgment in the Debtor's favor on its counterclaims against the Plaintiffs. Further, the Plaintiffs seek annulment. There are 12 non-exclusive factors that courts weigh to determine whether "cause" exists to grant relief to allow an entity to continue pending litigation against a debtor in a non-bankruptcy forum:

1. Whether the relief will result in a partial or complete resolution of the issues;
2. The lack of any connection with or interference with the bankruptcy case;
3. Whether the foreign proceeding involves the debtor as a fiduciary;
4. Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;
5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;
7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;
8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);
9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);
10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties;
11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and
12. The impact of the stay on the parties and the "balance of hurt."

*In re Plumberex Specialty Products, Inc.*, 311 B.R. 551, 559 (Bankr. C.D. Cal. 2004) (citing *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984)). Not all the factors will be relevant, and some will carry more weight than others. *Id.* at 560.

///

///

///

**1.    Whether the relief will result in a partial or complete resolution of the issues**

Granting relief from the stay would allow the Texas state court to proceed to judgment and resolution of all of the issues presently pending in the Texas Action. Distributional issues related to the claims allowance process are within this Court's exclusive jurisdiction. *See In re Landmark Fence Co., Inc*., 2011 WL 6826253, at *5 (C.D. Cal. Dec. 9, 2011) (unpublished) (holding that where class action plaintiffs had filed proofs of claims in the debtor's bankruptcy case, any issues related to priority and subordination of those filed proofs of claims were within the exclusive jurisdiction of the bankruptcy court) (citing *People of State of New York v. Irving Trust Co*., 288 U.S. 329, 332 (1933); *Pepper v. Litton*, 308 U.S. 295, 305 (1939))).  Nonetheless, without the Plaintiffs' consent, issues related to this Court's authority, as an Article I court, to adjudicate the state law causes of action pending in the Texas Action (all of which arise under Texas law) would raise additional issues. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1940 (2015). Those Article I jurisdictional issues would not arise in Texas state court.

Critically, the Plaintiffs have not filed a proof of claim. To be clear, it is asserted by the Plaintiffs that an unauthorized proof of claim was filed, but it was later withdrawn. *See* Notice of Withdrawal of Proof of Claim [Dk. 260, Exh. 3]. This assertion is unchallenged. Moreover, the Plaintiffs' counsel Ms. Wang Ekvall indicated at the November 5, 2015 hearing that the Plaintiffs would not consent to bankruptcy court authority over these state law causes of action.

The Court is mindful that certain Non-Debtor Defendants have filed proofs of claims against the Debtor's estate for, among other things, indemnification for any liabilities arising from the Texas Action. Any distributional issues related to claims arising from indemnification, however, would only become liquidated after resolution of the Texas Action.

The Debtor did not provide any comparative cost analysis between the state and federal forums with respect to these issues. Moreover, the Debtor's bankruptcy counsel, Mr. Lianides, stated at the November 5, 2015, hearing that the Debtor really is seeking to delay the state court trial so that the Debtor can file its plan and disclosure statement, which are due on December 9, 2015. Mr. Lianides emphasized that the Debtor would prefer to mediate the matter; however, he also admitted that the Texas state court had already entered an order requiring the parties to mediate prior to trial. By granting relief, the parties could effectuate mediation under the auspices of that state court order:

> Judge: Did you have an opportunity to mediate in the state court proceeding?
> Mr. Lianides: There's a state court order that requires mediation prior to trial.
> Judge: Have you mediated?
> Mr. Lianides: Not yet.
> Judge: Would you like to mediate?
> Mr. Lianides: Yes.
> Judge: Ok, so, if I grant relief, that order will become operative, and you can mediate. And the cost of mediation—whether it's in a state court matter now or later—is irrelevant because you want to mediate now. . . .

Hearing Transcript 11/5/2015 at 12:34 p.m. For practical purposes, without consent, the bankruptcy forum would create additional issues and costs that would not exist in the state court.

Moreover, the Texas Action involves multiple parties and multiple Texas state law causes of action. It has been pending for over two years in Texas state court, and it is ready for trial. *See In re Plumberex Specialty Products, Inc.*, 311 B.R. 551, 556-57 (Bankr. C.D. Cal. 2004) ("Courts in the Ninth Circuit have granted relief from the stay under § 362(d)(1) when necessary to permit pending litigation to be concluded in another forum if the non-bankruptcy suit involves multiple parties or is ready for trial.") (citations omitted). Even though the Debtor has argued that it is not ready for trial, the Debtor provided no admissible evidence other than a conclusory statement by Kevin Michaels, Esq. *See* Michaels Declaration [Dk. 270]. The Abatement Order was issued on August 31, 2015, and the matter was set for trial on October 5, 2015. When asked by

the Court at the November 5, 2015 hearing, no counsel could provide details concerning the circumstances surrounding the October 5th trial setting.

All of the causes of action in the Texas Action arise under state law. The Texas court is best suited to adjudicate these causes of action. This Court has independently reviewed the docket in the Texas Action which reflects extensive pleadings, decisions, and dispositions by the Texas state court which could include interpretations of the Agreed Temporary Injunction Order and whether disbursements made under that order were appropriate. As a result, there is a risk of inconsistent determinations between the two court systems.

This factor weighs in favor of granting relief from stay.

## 2. The lack of any connection with or interference with the bankruptcy case

"The most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate." *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984). The Debtor argues that it is not ready for trial and that it would prefer to delay trial for long enough to allow it to prepare and file a plan and disclosure statement. The Debtor acknowledges that the Texas Action must, at some point, be resolved; however, the Debtor seeks to delay the trial until it has filed its plan and disclosure statement.

The Debtor estimates over $230,000.00 in projected trial fees and expenses to go to trial in Texas state court, Michaels Declaration [Dk. 270, page 2, ¶3]; however, the Debtor did not provide evidence as to what savings the Debtor would experience by delaying the trial of the Texas Action. In other words, the Debtor provided no comparative evidence suggesting that denying stay relief would ultimately result in less interference with the bankruptcy estate. *See In re Baleine, LP*, 2015 WL 5979948, at *9 (C.D. Cal. Oct. 13, 2015) (noting the importance of a comparative analysis); *In re Roger*, 2015 WL 5971552, at *8 (C.D. Cal. Oct. 13, 2015) (same).

At the November 5, 2015 hearing, the Court reviewed the Harris County, Texas docket, of which it now takes judicial notice, which provided that the Debtor's state court counsel, Mr. Michaels, has appeared on behalf of multiple defendants in the Texas Action. Assuming *arguendo* that the $230,000.00 estimate is valid, it is not clear whether that amount would be allocated to the Debtor solely or, perhaps, to one or more of the various other parties represented by Mr. Michaels in the Texas Action.

In addition, denying relief from stay may result in additional litigation fees and costs due to the jurisdictional issues associated with litigating these state law causes of action against a non-creditor in bankruptcy court. These additional costs related to jurisdiction would not be at issue in the state court proceeding. These issues may very well drive up the cost of litigation in the bankruptcy court, but would not arise at all in the Texas state court. The Debtor has not provided a comparative analysis of these fees and costs, and so the Debtor has not met its burden.

While the Debtor asserts that it has "an enormous economic stake in the success or failure of the Texas Action," it acknowledged at the November 5, 2015 hearing that its stake of $1.325 million would be diminished by any liabilities of ASROP, in which the Debtor owns a 94% interest. [Dk. 268 page 25, lines 25-26]. The Debtor did not provide sufficient evidence related to the net interest to the Debtor's estate after deducting any potential liabilities of ASROP. The Debtor states that it does not have the time or resources to both defend the Texas Action and prepare for reorganization. The Debtor's plan and disclosure statement are due by December 9, 2015. With respect to this issue, the Court and Mr. Lianides had a lengthy discussion at the November 5, 2015 hearing regarding the impact of the Texas Action upon the Debtor's estate. The CRO has no personal knowledge with respect to the Texas Action, and part of the CRO's function in this bankruptcy case is to oversee all of the affairs of the Debtor. The Debtor's CRO, Michael Issa, is highly competent, well-respected, and capable. The Debtor did not provide an adequate explanation as to why delaying the Texas Action would impact

upon the Debtor's time and resources or why this would be beyond the CRO's capabilities.

The Debtor provides insufficient analysis of why the Segregated Account constitutes property of the estate under § 541(a). As referenced in the corporate chart above, the Debtor is the 94% general partner of a limited partner, ASROP (a non-debtor), of the Partnership (a non-debtor). The Partnership owns the Segregated Account. The Partnership is a Delaware limited partnership. Under Delaware law, ASROP, as a limited partner of the Partnership, does not have any interest in specific partnership property. *See* Del. Code Ann. tit. 6, § 17-701 ("A partnership interest is personal property. A partner has no interest in specific limited partnership property.").

At the hearing, Mr. Lianides acknowledged that the Debtor has an indirect interest in the Segregated Account. Hearing Transcript 11/5/2015 at 11:33 a.m. (Mr. Lianides stated that the ASROP, a subsidiary of the Debtor, was the direct beneficiary of the Segregated Account). Mr. Opera explains his view of the Debtor's interest in the Segregated Account in a letter dated July 22, 2015, in which he states that "any recovery by ASROP from the Partnership may be made available for distribution to the creditors of [the Debtor]." *See* Letter [Dk. 278, Exh. 2]. Because the Debtor only owns an interest in ASROP, the Segregated Account does not appear to be property of the Debtor's estate. *See, e.g.*, *In re Katz*, 341 B.R. 123, 128 (Bankr. D. Mass. 2006) ("A debtor's interest in a partnership is an asset of the debtor's estate under 11 U.S.C § 541; the assets of the partnership are not." (citing *In re Olszewski*, 124 B.R. 743, 746–47 (Bankr. S.D. Ohio 1991); *Normandin v. Normandin (In re Normandin)*, 106 B.R. 14 (Bankr. D. Mass. 1989)).

This factor weighs in favor of granting relief from stay.

**3.     Whether the foreign proceeding involves the debtor as a fiduciary**

This factor is not applicable.

14

**4.      Whether a specialized tribunal has been established to hear
the particular cause of action and whether that tribunal has the
expertise to hear such cases**

All of the Texas Action causes of action arise under state law. These causes of
action do not involve unsettled issues of state law, nor do they require a specialized
tribunal. The Debtor asserts that "the Bankruptcy Court is in fact the specialized tribunal
that will need to resolve the bankruptcy related issues with respect to indemnity claims
. . . ; subrogation . . . ; and post-petition interest . . . ." [Dk. 268, page 28, lines 10-13].

Again, although certain Non-Debtor Defendants have filed proofs of claims
against the Debtor's estate for, among other things, indemnification, any distribution on
those proofs of claims would only become liquidated upon resolution of the Texas
Action.

The Texas state court has general jurisdiction to decide state law causes of
action. Texas state courts have the expertise to hear and decide issues arising under
Texas state law. While bankruptcy courts commonly adjudicate state law issues during
the claims allowance process, the Court notes that the Plaintiffs presently do not have
an allowed proof of claim against the Debtor's estate. The Debtor provides insufficient
analysis of how any proof of claim for indemnity would become liquidated without
adjudication of the underlying state law causes of action. Once again, the Debtor fails
to address how this Court would have authority to adjudicate these state law
counterclaims against non-creditors of the estate. As discussed above, the optimal
court to decide these state law issues is the Texas state court who has dealt with this
litigation for over two years.

This factor weighs in favor of granting relief from stay.

**5.      Whether the debtor's insurance carrier has assumed full
financial responsibility for defending the litigation**

One of the Plaintiffs' allegations is that William Carden, the CEO and Chairman
of the Board of Debtor, obtained D&O insurance, upon learning of allegations against

him of, among other things, SEC violations. *See* Motion for Relief [Dk. 260, Exh. 14, ¶44-47]. It is unknown whether or to what extent the Debtor's D&O carrier would defend or cover the cost of defending some or all of the causes of action arising in the Texas Action. The Debtor's counsel stated during the November 5, 2015 hearing that the Debtor has no insurance coverage for the Texas Action, and the Court was unable to locate any evidence of an insurance policy which would divulge the scope and extent of any D&O insurance coverage or the lack thereof. Insofar as the Debtor is only seeking to delay the Texas Action, the existence or lack of insurance may not be relevant and this factor may be neutral, as the Debtor would ultimately have to expend funds prosecuting the litigation in any event.

**6.    Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question**

This factor is not applicable.

**7.    Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties**

The Debtor asserts that its defense of litigation in Texas will result in "significant disruption in the administration of the estate, at a time when the Debtor needs to focus on preparing and confirming a plan of reorganization." [Dk. 268 at page 29, lines 4-5]. The Debtor explains that the estate would suffer "prejudice" as a result of incurring trial costs. These arguments have been discussed above. *See supra* at Sections A.1. and A.2. The Debtor has not provided evidence that other interested parties would not be prejudiced. For example, it is evident that most of the Defendants are located in Texas. Indeed, Mr. Hurn previously filed a declaration with this Court on February 19, 2015 [Dk. 17], in which he states that the in-house legal department, the financing and accounting department, the property management department, and all the books and records of the Debtor are all located in Texas.

The Debtor has not met its burden with respect to this factor. This factor is neutral.

**8.    Whether the judgment claim arising from the foreign action is subject to equitable subordination under § 510(c)**

The Debtor asserts that an adverse judgment in the Texas Action may give rise to indemnity and contribution claims against the estate, which are "potentially subject to subordination pursuant to 11 U.S.C. § 509" and exemplary and punitive damages, which, the Debtor asserts, are also subject to subordination pursuant to §§ 726(a)(4) and 1129(a)(7)(A)(ii). Opposition [Dk. 268 at 30]. The Debtor provides no analysis, reasoning, or other factual basis for the Court to infer how or why the Plaintiffs' adverse judgment, potentially giving rise to indemnity claims as well as punitive damages, may be subject to *equitable subordination* under § 510(c).

The Debtor has not met its burden with respect to this factor. This factor is neutral.

**9.    Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under § 522(f)**

This factor is not applicable.

**10.    The interests of judicial economy and the expeditious and economical determination of litigation for the parties**

As discussed above, the Texas Action has been pending in Texas state court for over two years, and judicial economy favors allowing the Texas Action to continue in Texas state court. Additional litigation concerning bankruptcy court authority to order the parties to mediation or to hear and determine the state law causes of action by and against a non-creditor may involve additional costs, which would necessarily not be incurred if the matter were tried in state court. The Texas Action is ready for trial, the Texas court has already ordered mediation prior to trial, and a trial in Texas court will be the most economical venue for determination of this matter.

This factor weighs in favor of granting relief from stay.

**11.    Whether the foreign proceedings have progressed to the point where the parties are prepared for trial**

The Texas Action was most recently scheduled for trial on October 5, 2015. The trial was only abated five weeks earlier, on August 31, 2015. As noted above, the Debtor has failed to adequately articulate why the Debtor is not ready for trial in the Texas Action.

This factor weighs in favor of granting relief from stay.

**12.    The impact of the stay on the parties and the "balance of hurt"**

In analyzing this factor, courts balance the hardships as between the movant and the debtor. *See Curtis*, 40 B.R. at 807. Litigation costs may pose a hardship. *See id.* The added costs of litigating or mediating in bankruptcy court are discussed above. Again, the Debtor has not provided any analysis of the comparative costs between the two forums. On the other hand, the Plaintiffs have adequately established that denying relief would impose a substantial and significant hardship on them. The parties have litigated for over two years in Texas, and they continued to proceed without this Court's intervention, or the Debtor's complaint, for almost eight months after the California Bankruptcy case was filed. The Debtor acknowledges that it would still need to proceed in Texas, and the Debtor only seeks to delay the proceeding. At the November 5, 2015 hearing, Mr. Brown's counsel also acknowledged that the Texas Action would need to continue. *See* Hearing Transcript 11/5/2015 at 12:13 p.m. Without a comparative analysis or other sufficient evidence by the Debtor, the balance of the hardships favors granting relief.

In consideration of the *Curtis* factors above, the Plaintiffs have met their burden, the Debtor has not met its burden, and relief from stay should be GRANTED to allow the Plaintiffs to proceed to judgment in Texas state court. The Plaintiffs' request for relief from stay to setoff against the Debtor's counterclaims, however, is DENIED. The Plaintiffs have not provided sufficient evidence or argument to demonstrate "cause"

under § 362(d)(1) for obtaining relief from stay for purposes of setoff against the

Debtor's counterclaims. Further, the Plaintiffs' Evidentiary Objection is GRANTED.

### B.    Annulment

The Plaintiffs also seek annulment of the stay. Section 362(d) provides

authorization to annul the automatic stay, which, in effect, retroactively ratifies or

validates acts that otherwise violated the stay. *Lone Star Sec. & Video, Inc. v. Gurrola*

*(In re Gurrola)*, 328 B.R. 158, 172 (9th Cir. BAP 2005). Determining whether cause

exists to annul the stay retroactively is a case-by-case inquiry based on a balance of the

equities. *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*,

129 F.3d 1052, 1055 (9th Cir. 1997). In making this determination, the bankruptcy court

considers 12 factors:

1.  Number of filings;
2.  Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;
3.  A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;
4.  The Debtor's overall good faith (totality of circumstances test) . . . ;
5.  Whether creditors knew of stay but nonetheless took action, thus compounding the problem;
6.  Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;
7.  The relative ease of restoring parties to the status quo ante;
8.  The costs of annulment to debtors and creditors;
9.  How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;
10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;
11. Whether annulment of the stay will cause irreparable injury to the debtor;
12. Whether stay relief will promote judicial economy or other efficiencies.

*In re Fjeldsted*, 293 B.R. 12, 25 (B.A.P. 9th Cir. 2003). These factors, however, "are

merely a framework for analysis and not a scorecard," and thus, "[i]n any given case,

one factor may so outweigh the others as to be dispositive." *Id. See also In re Sinclair*,

2013 WL 2303729 (BAP 9th Cir. 2013) (unpublished). Pursuant to 11 U.S.C. § 362(g),

"the debtor bears the ultimate burden of proving that the request for retroactive relief

from the stay should be denied." *In re Fularon*, 2011 WL 4485202, at \*4-5 (B.A.P. 9th

Cir. July 11, 2011) (unpublished) (citing *In re Nat'l Envtl. Waste Corp.*, 191 B.R. at

836)).

### 1. Number of filings

There were two bankruptcies in this matter—one involuntary, filed against the

Debtor in California, and one voluntary, filed by the Debtor in Texas. The Texas

Bankruptcy petition was signed by Mr. Hurn, as Vice President and General Counsel to

the Debtor, and dated March 16, 2015. The Court entered an order to show cause on

March 17, 2015, requiring Mr. Hurn and others to appear in the Central District of

California on March 19, 2015, and show cause why they should not be held in contempt

and sanctioned $50,000.00 jointly and severally for violating the automatic stay by filing

the Texas Bankruptcy. *See* OSC [Dk. 44]. While the Court ultimately discharged its

OSC and transferred the Texas Bankruptcy to the Central District of California, Mr. Hurn

physically appeared at the March 19, 2015, hearing on the OSC and was present when

this Court expressed its concerns over potential forum-shopping issues.

### 2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors

This factor does not appear to be helpful or directly relevant to the Court's

analysis.

### 3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser

The Debtor has not adequately demonstrated that denying annulment would

prevent prejudice to creditors or other third parties. Indeed, it is possible that if stay

relief were not made retroactive, the estate might incur additional costs by having to file

or refile certain pleadings in the Texas Action, including the Second Amended Original

Answer and Counterclaim [Dk. 260, Exh. 10], which was filed by Mr. Faubus on behalf

of, among others, the Debtor, on February 27, 2015.

**4.      The Debtor's overall good faith (totality of circumstances test)**

The Debtor's failure to bring any of the actions taking place in the Texas Action to the attention of this Court, together with its involvement in the Texas Action, implicate not only the Debtor's overall good faith, but also equitable principles of waiver and estoppel.

Under the auspices of the Texas Court's Order Granting Sixth Amended Petition [Dk. 244, Exh. E], the parties continued to prosecute the Texas Action by filing certain pleadings, including a Second Amended Original Answer and Counterclaim (filed by Defendants including the Debtor) [Dk. 260, Exh. 10].  Strikingly, during this timeframe, the Debtor, represented by respected and competent counsel, did not file any motion for sanctions for stay violations or any motion seeking this Court to intervene with respect to the Texas Action or the Segregated Account. In fact, the Debtor did not bring this matter to this Court's attention until September 21, 2015, when the Debtor filed its Motion to Enforce Stay.

The Debtor states in its reply in support of the Motion to Enforce Stay that "all of the acts cited in the Opposition occurred prior to the appointment of the CRO and the new board of directors. Clearly, the acts or omissions of the Debtor's prior management should not be used as a basis to prejudice the rights of the estate or its creditors." [Dk. 279, page 2, lines 18-20]. This statement is not credible.

The Court notes that the party who signed the agreed temporary restraining order, which resulted in the Segregated Account, was Mr. Hurn, the Debtor's Vice President and General Counsel, who is currently and has been a named defendant in the Texas Action.  Indeed, Mr. Hurn signed a declaration in support of the Motion to Enforce on October 29, 2015, in which he again attests to his current position as the current Vice President and General Counsel of the Debtor.

Not only did Mr. Hurn know about the Texas Action, the Debtor's CRO clearly knew of the existence of the Texas Action as early as June 3, 2015, and possibly earlier, because the CRO signed the Debtor's statement of financial affairs, which

specifically lists the Texas Action. *See* Statement of Financial Affairs [Dk. 146, page 5 of 22].

From the very inception of this case, venue has been contentious. The Debtor's bankruptcy counsel is highly competent and, along with the Debtor's CRO, have conscientiously and methodically controlled, advised, and monitored the Debtor's operations. The Debtor was represented by state court counsel at all times in the Texas Action. *See* Hearing Transcript 11/5/2015 at 11:21 a.m. (Judge: "It wasn't as if the Debtor was unrepresented in the state court for the past two years?" Mr. Lianides: "Correct."). It is all the more remarkable that the Debtor's counsel did not *immediately* bring this Court's attention to any perceived stay violations by the Plaintiffs. Only after the Abatement Order was entered did the Debtor seek relief from this Court.

The Debtor's silence as to any perceived stay violations, coupled with its own active involvement in the Texas Action, the acknowledgment that the Texas Action needs to continue, the failure to articulate answers to the Court's questions regarding details concerning the Texas Action, and the failure to provide a comparative cost analysis, all support annulment.

**5.    Whether creditors knew of stay but nonetheless took action, thus compounding the problem**

The Plaintiffs first became aware of the bankruptcy on or about March 20, 2015, by way of a published article discussing the two bankruptcy cases. The Plaintiffs sought and obtained permission from the Texas court to proceed to file a Sixth Amended Petition. *See* Order Granting Sixth Amended Petition [Dk. 244, Exh. E]. The Order Granting Sixth Amended Petition states that "[the Debtor] can stay in the pleading with the understanding this Court may only assess liability to [the Debtor] unless the stay is lifted." *See* id. Order Granting Sixth Amended Petition [Dk. 244, Exh. E]. *See also* Lewis Declaration [Dk. 260, page 37, ¶15]. So, while the Plaintiffs did not seek stay relief until September 2015, they did seek an order from the Texas state court to allow them to

proceed in light of the bankruptcy filing.[9] While misguided, this effort by the Plaintiffs

supports their overall good faith under the totality of the circumstances.

### 6.    Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules

This factor is implicated only insofar as it touches upon other factors already

analyzed by the Court.

### 7.    The relative ease of restoring parties to the status quo ante

Insufficient evidence was presented concerning any difficulty in restoring the

parties to the status quo ante in the Texas Action. Further, and as analyzed above, if

the stay were not annulled, the estate may incur additional costs.

### 8.    The costs of annulment to debtor and creditors

The Debtor has presented insufficient evidence of what, if any, costs would be

incurred by the Debtor or creditors by granting annulment. Also, as analyzed above, the

estate may actually incur greater costs if annulment were denied.

### 9.    How quickly creditors moved for annulment, or how quickly debtor moved to set aside the sale or violative conduct

As analyzed above, the Debtor's failure to timely provide notice of the bankruptcy

proceedings to the attention of the Texas state court, along with the Debtor's failure to

advise this Court of any perceived stay violations, all while participating to some extent

in the Texas Action, militates against the Debtor. Further, as stated above, the Plaintiffs

sought dispensation from the Texas state court to proceed notwithstanding the stay,

which was approved by the Texas court on June 12, 2015. Order Granting Sixth

Amended Petition [Dk. 244, Exh. E]. This effort was misguided, but it shows an intent

and an effort by the Plaintiffs to avoid violating the automatic stay. As discussed above,

the Debtor waited for several months before filing its own Motion to Enforce Stay in the

bankruptcy court, which was set for hearing on regular notice (not on an emergency

---

[9] *See supra* note 7.

basis). The timing indicates that the Motion to Enforce Stay was only filed when the Debtor reached an impasse with respect to the request for accounting of the Segregated Account.

**10.    Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief**

This factor is sufficiently discussed above. *See supra* at Section B.9.

**11.    Whether annulment of the stay will cause irreparable injury to the debtor**

The Debtor has not met its burden to show that it will incur irreparable injury if annulment is granted. The Debtor asserted that defending the Texas Action would interfere with reorganization, but at the same time, the Debtor acknowledges that the Texas Action needs to proceed to judgment. *See* Hearing Transcript 11/5/2015 at 11:56 a.m. The Debtor's assertion, that the Debtor will suffer prejudice because the CRO's time will be burdened, is not persuasive. The Debtor's argument with respect to litigation costs was also insufficient. The Debtor did not provide a comparative cost analysis. This is important because of the potential added litigation costs associated with any jurisdictional issues that would arise in bankruptcy court.

**12.    Whether stay relief will promote judicial economy or other efficiencies**

Judicial economy will be served by allowing the Texas state court to continue to proceed to trial in the Texas Action, which has been pending before the Texas court for over two years, and has an extensive docket. As addressed above, there are considerable inefficiencies and costs that would be incurred if relief from stay were not granted. In this respect, annulment only serves to augment judicial economy.

Based upon the totality of the circumstances and in light of the *Fjeldsted* factors, annulment should be granted.

### C.    Motion to Enforce the Stay

The Debtor's Motion to Enforce the Stay seeks an order: (1) determining that the Texas Action against the Debtor and other co-defendants, is subject to the automatic stay, and that all post-petition proceedings against the Debtor, including the Sixth Amended Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction are void *ab initio*; (2) ordering Plaintiffs to provide, on behalf of ASROP and ASR GP, an accounting of the funds held in the Segregated Account; (3) an order enjoining any disbursements from the Segregated Account pending further order of this Court; and (4) ordering the Partnership, Fountainview New GP to produce to the Debtor all bank statements, records and documents concerning or relating to the Segregated Account, pursuant to Rule 2004, within 21 days of the service of the Motion to Enforce the Stay. Motion to Enforce Stay [Dk. 233].

The Court's analysis under the *Curtis* factors, above, determines that relief from stay, as well as annulment, should be granted. As a result, the Debtor's request for an order extending the stay or otherwise enforcing the stay as to the Plaintiffs and other Non-Debtor Defendants is DENIED. The Debtor's request for an accounting is also DENIED. As analyzed above, the Debtor has not shown that the Segregated Account is property of the Debtor's estate. The Debtor's arguments for an accounting are predicated upon the assumption that the Segregated Account indirectly affects the estate. The Texas state court, in light of the Texas Action's over two year history, is in the best position to interpret and enforce the terms of its own Agreed Temporary Restraining Order and to order an accounting of the Segregated Account if necessary. Finally, the Debtor's requests for production of documents pursuant to Rule 2004 is DENIED. The Debtor has not met its burden under Rule 2004 to demonstrate why this Court, and not the Texas state court, should order the turnover of bank statements or other records concerning the Segregated Account. The Court observes that the Plaintiffs have provided the current balance of the Segregated Account, *see* Declaration of Karen Tousek [Dk. 246], as well as a summary of disbursements from the

Segregated Account, *see* Plaintiff's Opposition [Dk. 244, page 15]. This may satisfy or aid the Debtor in pursuing this matter in state court.

## II.    Conclusion

In consideration of the foregoing, the Court GRANTS relief from stay, but only to allow the Plaintiffs to proceed to judgment in the Texas Action. Without further order of this Court, the Plaintiffs will not be permitted to setoff any of the Debtor's counterclaims. Annulment is GRANTED. The Debtor's Evidentiary Objection is GRANTED. The Court DENIES the Motion to Enforce the Stay in its entirety.

###

Date: November 10, 2015

Scott C. Clarkson
United States Bankruptcy Judge