ROBERT E. OPERA -- State Bar No. 101182
ropera@winthropcouchot.com
PETER W. LIANIDES – State Bar No. 160517
plianides@ winthropcouchot.com
ANDREW LEVIN - State Bar No. 290209
alevin@winthropcouchot.com
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone:   (949) 720-4100
Facsimile:    (949) 720-4111

General Insolvency Counsel for Debtor
and Debtor-in-Possession American Spectrum Realty, Inc.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No. 8:15-bk-10721-SC |
| AMERICAN SPECTRUM REALTY, INC., | Chapter 11 Proceeding |
| Debtor and<br>Debtor-in-Possession. | **APPLICATION OF DEBTOR AND DEBTOR-IN-POSSESSION TO EMPLOY FORD HARRISON LLP AS ITS SPECIAL LITIGATION COUNSEL IN TEXAS ACTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF RACHEL Z. ULLRICH AND J. MICHAEL ISSA IN SUPPORT THEREOF** |
| | [No Hearing Requested Pursuant to Local Bankruptcy Rule 9013-1(o)] |

1    American Spectrum Realty, Inc., the debtor and debtor-in-possession in the above-

2    captioned Chapter 11 case ("ASR" or the "Debtor"), hereby applies to this Court for an order

3    authorizing it to employ the Ford Harrison LLP ("Firm"), as its special litigation counsel with

4    respect to a wrongful termination action pending in the state of Texas.  As set forth in more

5    detail below, the Firm's fees and costs will be paid the insurance carrier, and thus compensation

6    will not be sought from the estate.  This Application is made and based upon the Memorandum

7    of Points and Authorities, the Declaration of Rachel Z. Ullrich ("Ullrich Declaration") and the

8    Declaration of J. Michael Issa ("Issa Declaration"), attached hereto, the papers, pleadings and

9    other documents on file in this case, and upon any additional evidence, both oral and

10    documentary, that may be presented to the Court at or before the time of the hearing on this

11    Application, if any should be held on this Application.

12    In support of this Application, ASR respectfully represents as follows:

13    **Background of ASR and ASR's Case**

14    1.    ASR is a real estate investment company that owns, through its subsidiaries and

15    affiliates, interests in office, industrial, self-storage, retail and apartment properties throughout

16    the United States.  ASR has been a publicly-traded company since 2001 and its shares

17    commenced trading on the New York Stock Exchange in or about 2002.

18    2.    On February 13, 2015 ("Petition Date"), an involuntary petition for relief under

19    Chapter 11 of the Bankruptcy Code was filed against ASR by D&A Daily Mortgage Fund III,

20    L.P., D&A Semi-Annual Mortgage Fund III, L.P., and D&A Intermediate-Term Mortgage Fund

21    III, L.P. (collectively, the "Petitioners").

22    3.    On or about April 28, 2015, the Petitioners and ASR reached an agreement to

23    resolve their differences, and entered into that *Stipulation to: (1) Call Special Shareholder*

24    *Meeting to Appoint Preferred Directors; (2) Appoint Interim Chief Executive Officer or Chief*

25    *Restructuring Officer; (3) Enter Order for Relief; (4) Dismiss Related Voluntary Case; and*

26    *(5) Set Deadlines to Meet United States Trustee Compliance and to File Bankruptcy Schedules*

27    *and Statements* ("Stipulation").

28

1    4.    On May 1, 2015, the Court entered an order terminating the appointment of the

2  Interim Trustee in this case, and an order for relief in this case ("Order for Relief").

3    5.    In accordance with the provisions of the Stipulation, Mr. Issa has been appointed

4  as CRO of ASR. Since the employment of Mr. Issa, he has been responsible for managing

5  ASR's financial affairs and for administering ASR's Chapter 11 case.

6    <u>**Texas Action and Plaintiff's Waiver of Claims Against the Estate**</u>

7    6.    By this Application, ASR seeks to employ the Firm to serve as ASR's litigation

8  counsel in connection with certain litigation, entitled <u>Gus Anthony Eppolito, Jr. v. American</u>

9  <u>Spectrum Realty, Inc., et.al.</u>, Case no. 2014-11428 ("Texas Action"), pending in 234th Civil

10  District Court of Harris County, Texas ("Texas Court"). The plaintiff in the Texas Action was

11  an officer of the Debtor and asserts a claim for wrongful termination.

12    7.    On or about September 9, 2015, the plaintiff Eppolito filed a motion for relief

13  from stay with respect to the Texas Action, docket no. 229, and *inter alia* represented that

14  "Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or

15  other claim against the Debtor or property of the Debtor's bankruptcy estate." Based upon such

16  waiver, the Debtor did not oppose the Motion.

17    8.    On October 22, 2016, the Court entered its *Order Granting Motion for Relief from*

18  *the Automatic Stay*, docket no. 267 ("RFS Order"). See Exhibit 1. The RFS Order expressly

19  provides that plaintiff in the Texas Action is permitted to enforce its final judgment only by:

20  "Collecting upon any available insurance in accordance with applicable nonbankruptcy law.

21  **Movant waives any deficiency or other claim against the Debtor or property of the**

22  **Debtor's bankruptcy estate.**" RFS Order, ¶ 5(a) (emphasis added).

23    <u>**Proposed Employment Of the Firm**</u>

24    9.    The Firm specializes in all aspects of labor and employment law. Rachel Ullrich

25  will be the attorney primarily responsible for the representation of the Debtor in the Texas

26  Action and is Counsel at Ford Harrison. Rachel Ullrich has been a licensed Texas attorney since

27  1997 and is Board Certified in Labor and Employment Law by the Texas Board of Legal

28  Specialization. A true and copy of the resume of Ms. Ullrich is attached as Exhibit "2" to the

1    Ullrich Declaration. Ms. Ullrich will be assisted in this matter by Allyn Lowell. She is also

2    Counsel at Ford Harrison. Ms. Lowell has been a licensed Texas attorney since 2008 and is also

3    licensed in Tennessee. Mr. Aaron Zandy is the firm partner supervising Ms. Ullrich and Ms.

4    Lowell on this matter. Mr. Zandy is a licensed Florida attorney in the Firm's Orlando office.

5         10.    The Firm's fees and costs in the Texas Action will be paid by the Debtor's

6    insurance carrier, and that the Firm does not intend to seek any award of fees or costs from the

7    Debtor.

8         11.    ASR and the Firm have agreed, subject to the Court's approval, to the terms of the

9    Firm's employment in this case. These terms are set forth in the Representation Agreement

10   dated December 16, 2013 ("Representation Agreement"), entered into by and between ASR and

11   the Firm. A true and complete copy of the Representation Agreement is attached as Exhibit "3"

12   to the Ullrich Declaration.

13        12.    ASR requires the services of the Firm to represent the Debtor in the Texas Action.

14   The Firm will provide the following services to the Debtor:

15              (a)    To represent ASR in Texas Action, as may be requested by ASR;

16              (b)    To take such other action and perform such other services as ASR may

17         require of the Firm in connection with the Texas Action.

18        13.    As set forth in the Ullrich Declaration, other than $25,000 in fees the Firm

19   received from ASR pursuant to its EPLI insurance policy prior to the Petition Date, the Firm has

20   received no payments or retainer from the Debtor. The Firm's remaining fees and costs will be

21   paid by the Debtor's insurance carrier, and that the Firm does not intend to seek any remaining

22   fees or costs from the Debtor's estate.

23        14.    The Firm has conducted a conflicts check with respect to the adverse parties in the

24   Texas Action. The conflicts check indicates that the Firm has never represented any of such

25   parties. To the best of the Firm's knowledge, the Firm has never represented any party in the

26   Texas Action, apart from the Debtor.

27

28

MAINDOCS-#220032-v3-ASR_App_Employ_Ford_Harrison.doc

15.     To the best of the Firm's knowledge, neither the Firm nor any of its professionals (i) was a creditor, an equity security holder, or an insider of ASR as of the Petition Date, or (ii) is or was, within two years before the Petition Date, a director, officer or employee of ASR.

16.     The Firm believes that it does not hold or represent any interest materially adverse to the interests of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in ASR or for any other reason. The Firm believes also that it has no conflict that would impair the Firm's ability to perform professional services for ASR in accordance with Section 327 of the Bankruptcy Code.

17.     The Firm has conducted a conflicts check with respect to twenty (20) largest general unsecured creditors and the secured creditors listed in ASR's Schedules of Assets and Liabilities. The conflicts check indicates that the Firm has never represented any of such creditors except Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins"). Allen Matkins filed proof of claim no. 79-1 against the bankruptcy estate in the amount of $1,827.738.76, for unpaid fees and costs for legal services. In 2014, the Firm provided legal advice to Allen Matkins related to an acquisition in Illinois. Neither Ms. Ullrich, Ms. Lowell nor Mr. Zandy, were involved in the Firm's prior representation of Allen Matkins. Ms. Ullrich has contacted the attorney responsible for the prior representations of Allen Matkins, and based thereupon, believes such representation was unrelated to the Debtor or the Texas Action. The Firm's representation of Allen Matkins was brief and no longer ongoing.

18.     Based upon the foregoing, the Firm believes that it "does not represent or hold any interest adverse to the debtor or to the estate" with respect to the specified purpose of the proposed employment.

19.     None of the attorneys comprising or employed by the Firm is related to any judge of the United States Bankruptcy Court for the Central District of California, the U.S. Trustee, or to any person employed by the U.S. Trustee.

20.     The Firm has not agreed to share with any person or entity any compensation received by the Firm in ASR's case, except as among the members of the Firm and the attorneys who are of counsel to the Firm.

1    **WHEREFORE**, ASR respectfully requests that the Court enter an order as follows:

2    A.    Authorizing ASR to employ the Firm as its litigation counsel, pursuant to

3    Sections 327 and 328 of the Bankruptcy Code, Rule 2014(a) of the Federal Rules of Bankruptcy

4    Procedure, and Rule 2014-1(b) of the Local Bankruptcy Rules and the terms of this Application,

5    and pursuant to the terms of the Representation Agreement;

6    B.    Authorizing the Firm to obtain compensation of its fees and costs for sources

7    outside the estate, i.e., the insurance carrier, without further order of the Court; and

8    C.    Granting to ASR and to the Firm such other and further relief as the Court deems

9    just and appropriate.

10   DATED:  June 3 , 2016                    **AMERICAN SPECTRUM REALTY, INC.**

11

12                                           By: _____

13                                                J. Michael Issa
                                             Its:  Chief Restructuring Officer

14   **PRESENTED BY:**
     **WINTHROP COUCHOT**

15   **PROFESSIONAL CORPORATION**

16   By:    _/s/ Peter W. Lianides_____

17          Robert E. Opera
            Peter W. Lianides

18   General Insolvency Counsel

19   for Debtor and Debtor-in-Possession

20

21

22

23

24

25

26

27

28

MAINDOCS-_220032-v3-ASR_App_Employ_Ford_Harrison.doc

## MEMORDANDUM OF POINTS AUTHORITIES

## I.

## THE BANKRUPTCY CODE AUTHORIZES THE

## DEBTOR TO EMPLOY PROFESSIONALS

Section 327(e) of the Bankruptcy Code, which governs employment of special counsel, provides, in pertinent part, as follows:

> (e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).[1]

The test used by many courts in the Ninth Circuit for employment of special counsel under 327(e) sets forth a three-prong test.  In re Star Ready Mix, Inc., 2008 Bankr. LEXIS 3400, 6-7 (Bankr. E.D. Cal. Dec. 18, 2008).  First, the employment may only be authorized for a "specified special purpose" other than "conducting the case."  Second, the Trustee must show that the proposed attorney or law firm "does not represent or hold any interest adverse to the debtor or to the estate" with respect to the specified purpose of the proposed employment.  Third, the Trustee must also show that the employment of special counsel for a specified purpose is in the "best interest of the estate."

Rule 2014 of the Federal Rules of Bankruptcy Procedure mandates that a professional seeking approval of its employment by the bankruptcy estate disclose "any proposed arrangement for compensation" and "all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, [and] the United States Trustee."  Fed. R. Bankr. P. 2014(a).  All facts pertinent to a court's determination of whether

---

[1] Alternatively, special counsel may be employed under Section 327(a) under essentially the same test as Section 327(e).  See Stoumbos v. Kilimnik, 988 F.2d 949, 964 (9th Cir. 1993) ("Reasoning by analogy to section 327(e), several courts have held that, where the trustee seeks to appoint counsel only as 'special counsel' for a specific matter, there need only be no conflict between the trustee and counsel's creditor client with respect to the specific matter itself."); In re Fondiller, 15 B.R. 890, 892 (B.A.P. 9th Cir. 1981).

MAINDOCS-#220032-v3-ASR_App_Employ_Ford_Harrison.doc

1  the professional holds an interest adverse to the estate must be disclosed.  The professional is

2  required to make a full, candid and complete disclosure in its application for employment.  See

3  In re Lotus Props. LP, 200 B.R. 388, 391 (Bankr. C.D. Cal. 1996) (citing In re Park Helena

4  Corp., 63 F.3d 877, 880-82 (9th Cir. 1995)); In re Gire, 107 B.R. 739, 746 (Bankr. E.D. Cal.

5  1989); Fed. R. Bankr. P. 2014.

6      In this case, in accordance with the requirements of Rule 2014 of the Federal Rules of

7  Bankruptcy Procedures, the Firm has provided full disclosure of any such connections of which

8  it has knowledge.  See Ullrich Decl.  As set forth hereinbelow, the Firm does not hold or

9  represent an interest adverse to the Debtor or the estate with respect to the matters for which it is

10  being employed.

11      **A.**      **The Firm Does Not Hold an Interest Adverse to the Estate.**

12      The Bankruptcy Code does not define the phrase "adverse interest."  However, courts

13  have held that a party will be deemed to hold or represent an "adverse interest" to the estate

14  when it: (1) possesses or asserts any economic interest that would tend to lessen the value of the

15  bankruptcy estate or that would create an actual or potential dispute in which the estate is a rival

16  claimant; or (2) possesses a predisposition under circumstances that render such a bias against

17  the estate.  See Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney (In re Tevis), 347 B.R. 679, 688

18  (B.A.P. 9th Cir. 2006); In re Lee, 94 B.R. 172, 177 (Bankr. C.D. Cal. 1989).

19      Here, neither the Firm nor any professional who is a member of the Firm possesses or

20  asserts an economic interest that would tend to lessen the value of the estate or that would create

21  an actual or potential dispute against the estate or has a predisposition that will create a bias

22  against the estate.  As of the Petition Date, the Firm was not a creditor of ASR.  Moreover, the

23  Firm has no connections or conflicts with respect to the Texas Action case that would create any

24  bias against the estate.

25      The Firm has conducted a conflicts check with respect to twenty (20) largest general

26  unsecured creditors and the secured creditors listed in ASR's Schedules of Assets and Liabilities.

27  The conflicts check indicates that the Firm has never represented any of such creditors except

28  Allen Matkins.  Allen Matkins filed proof of claim no. 79-1 against the bankruptcy estate in the

1   amount of $1,827.738.76, for unpaid fees and costs for legal services.  In 2014, the Firm

2   provided legal advice to Allen Matkins related to an acquisition in Illinois, which the Firm

3   believes was unrelated to the Debtor or the Texas Action.  The Firm's representation of Allen

4   Matkins was brief and no longer ongoing.  As a result, there is no conflict of interest with respect

5   to the matter in which the Firm is being employed.

> Section 327(c) allows the appointment of counsel to represent the trustee, even
> where counsel represents a creditor, where the court finds no "actual conflict of
> interest." Reasoning by analogy to section 327(e), several courts have held that,
> where the trustee seeks to appoint counsel only as "special counsel" for a
> specific matter, there need only be no conflict between the trustee and counsel's
> creditor client with respect to the specific matter itself. *Fondiller v. Robertson (In
> re Fondiller),* 15 B.R. 890, 892 (Bankr. 9th Cir.1981), *appeal dismissed,* 707
> F.2d 441 (9th Cir.1983); *see also Altenberg v. Schiffer (In re Sally Shops, Inc.),*
> 50 B.R. 264, 266 (Bankr.E.D.Pa.1985) (following *Fondiller*).

Stoumbos v. Kilimnik, 988 F.2d 949, 964 (9th Cir. 1993).   See also 11 U.S.C. § 327(c) ("In a case

under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this

section solely because of such person's employment by or representation of a creditor, unless there

is objection by another creditor or the United States trustee, in which case the court shall

disapprove such employment if there is an actual conflict of interest.")

Here, the Firm does <u>not</u> presently represent Allen Matkins, and such prior representation

of Allen Matkins is believed to be unrelated to the Debtor or the Texas Action.

Accordingly, the Firm does not hold or represent any interest adverse to the estate with

respect to the matters for which it is employed.

**B.    The Firm's Employment Should Be Approved.**

Based on the foregoing and the disclosure made in the Application, which satisfies the

disclosure requirements imposed by the Bankruptcy Code, Rule 2014 of the Federal Rules of

Bankruptcy Procedure and Local Bankruptcy Rule 2014-1, the Firm has met the required

standards for employment in this case.  Accordingly, this Court may authorize the proposed

employment of the Firm as special litigation counsel to ASR pursuant to Bankruptcy Code

Section 327(e).

**II.**

**THE FIRM'S FEES MAY BE PAID FROM SOURCES OUTSIDE THE ESTATE,**

**WITHOUT FURTHER COURT ORDER OR APPROVAL**

    **A.**    **Sections 330 and 331 Does Not Apply With Respect to Fees Paid From Outside the Estate, and Thus No Fee Application is Required Here.**

    The Firm's fees and costs in the Texas Action shall be paid by the insurance carrier, and thus the Firm does not intend to seek any award of fees or costs from the Debtor or the bankruptcy estate.  It is well established that fee applications are unnecessary when a professional is being compensated from sources outside the estate.  See In re McDonald Bros. Const., Inc., 114 B.R. 989, 994 (Bankr.N.D.Ill.1990) ("the fee application procedure *only* applies when a professional is seeking an award from the estate."  "Thus, professionals who hold funds that do not belong to the estate need not, and should not, seek an award of those funds through the fee application process"); David & Hagner, P.C. v. DHP, Inc., 171 B.R. 429, 436 (D.D.C. 1994) *affirmed* 70 F.3d 637 (D.C. Cir. 1995) (Chapter 11 debtor's law firm was not required to apply to bankruptcy court for allowance of payments received from the third party).

    Moreover, the case law holds that a bankruptcy court has no jurisdiction, under Sections 330 or 331 of the Bankruptcy Code, with respect to the use non-estate property to pay the fees and costs of debtor's counsel.  See, Roland v. UNUM Life Ins. of America, 223 B.R. 499, 503 (E.D.Va. 1998) ("the bankruptcy court would have no jurisdiction to prevent the use of non estate assets for the retention of counsel unrelated to the bankruptcy proceeding."); Noble v. White, 85 Conn. App. 233, 239, 857 A.2d 362, 365 (2004) ("The law is clear that the Bankruptcy Court does not have jurisdiction for fees paid from nonbankrupt estate assets that are not related to the bankruptcy proceeding itself.").

    In David & Hagner, P.C. v. DHP, Inc., 171 B.R. 429 (D.D.C. 1994) affirmed 70 F.3d 637 (D.C. Cir. 1995), held that a law firm representing the Chapter 11 debtor was not required to apply for the approval of fees paid by a non-debtor entity:

        These sections [330 and 331], however, do not expressly apply to payments from non-debtor sources. Furthermore, Bankruptcy Rule 2016(a), the rule that sets forth the procedure for obtaining the compensation authorized in Sections

330 and 331, expressly limits itself to applications for fees from the bankruptcy estate. *See* Bankr.Rule 2016(a) ( "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, *from the estate* shall file an application setting forth a detailed statement....") (emphasis supplied). Therefore, these Code provisions do not lend clear support to the Defendants' claim.

*** Because the bankruptcy court has no authority to award compensation from sources other than the estate, no applications were presented to it by the Plaintiff for the award of fees pursuant to the Guarantee. The bankruptcy court apparently held this view as well. Despite its awareness of the Guarantee during more than five years that the cases were pending, the bankruptcy court never invited applications for the allowance of payments from the guarantor, or suggested that Plaintiffs failure to make such applications violated the Bankruptcy Code.

David & Hagner, P.C. v. DHP, Inc., 171 B.R. 429, 437 (D.D.C. 1994), aff'd, 70 F.3d 637 (D.C. Cir. 1995).

Similarly, in In re McDonald Bros. Construction, Inc., 114 B.R. 989, 993 (N.D.Ill. Bankr. 1990), the Court held that the Fee application procedure of Sections 330 and 331 must be followed whenever compensation is sought from the estate, but not when compensation has been obtained from another source:

[T]he fee application procedure *only* applies when a professional is seeking an award payable from the estate.... Thus, professionals who hold funds that do not belong to the estate need not, and should not, seek an award of those funds through the fee application process.

Counsel for a debtor who is compensated from a source other than the estate must comply with the monitoring procedure of Section 329, but this procedure does not require court approval of a fee application.

* * *

Section 329(a)... [requires] debtors' counsel to file what is, in effect a disclosure statement, setting forth (1) the compensation that they receive outside of the fee application process and (2) the source of the compensation [footnote omitted].... Thus, even if a debtor's attorney intends to receive no compensation whatever from the estate, Section 329(a) assures that the court and other interested parties will be informed of the source and amount of the attorney's compensation for bankruptcy services.

However, the monitoring function of Section 329 does not require the debtor's counsel to provide a statement of time and services, nor does it require court approval before counsel may use the non-estate funds they have been paid.  To the contrary, the compensation of debtor's counsel from non-estate funds is unaffected by Section 329 unless the court finds, pursuant to Section 329(b), that "such compensation exceeds the reasonable value of any [bankruptcy-related] services."  Only if the compensation is excessive does Section 329(b) authorize the court to cancel an agreement to pay

1    debtor's counsel from non-estate funds or to order the return of funds already
     paid.

2    McDonald Bros., 114 B.R. 989, 994-996.

3        Similarly, in the case, Matter of Hargis, 887 F.2d 77, 79 (5th Cir. 1989), the Fifth Circuit

4    Court of Appeals held that a bankruptcy court has "no authority to order disgorgement of the funds

5    received by [counsel], which consisted wholly of non-estate assets." In Hargis, the Fifth Circuit

6    determined that the fiduciary duties of a debtor in possession do not apply to non-estate funds:

7            The avoidance powers of the bankruptcy trustee and the power of the
             bankruptcy court to regulate professional services are exclusively geared
8            toward protecting the rights of creditors via protection of the bankruptcy
             estate. Where, as here, payment of a claim is made out of non-estate assets,
9            this goal is in no way served by requiring disgorgement of the payment. To
             the contrary, the other creditors are more likely helped than harmed, as the
10           payment of one creditor out of non-estate assets frees up estate assets for
             payment of the other creditors and allows each to take a correspondingly
11           larger slice of the bankruptcy pie.

12               The Trustee's contention that debtors-in-possession owe an absolute
             fiduciary duty not to prefer one creditor over another is likewise
13           unpersuasive. To be sure, a fiduciary duty exists--but only with respect to
             estate funds. The debtor may do what he will with non-estate funds. This
14           duty is equivalent to that of the trustee of a trust. By arguing that the debtor-
             in-possession owes a duty with respect to non-estate funds, the Trustee, in
15           effect, maintains that a trustee of a trust has a duty to beneficiaries, not only
             with respect to the rest of the trust, but also with respect to the trustee's own
16           personal property. Such a proposition is absurd under the law of trusts; there
             is no distinction that makes it any less absurd in the bankruptcy context.
17

18   Matter of Hargis, 887 F.2d at 79.

19       The above-cited authority makes clear that, if a professional obtains compensation from

20   non-estate assets, such compensation is not subject to review under Sections 330 or 331 of the

21   Bankruptcy Code.

22       **B.    Section 329 Does NOT Apply When Counsel is Retained with Respect to a**

23   **Proceeding Unrelated to the Bankruptcy.**

24       As noted above in McDonald Bros., supra, Section 329 of the Bankruptcy Code may still

25   apply, authorizing the bankruptcy court to review for reasonableness all fees paid to such

26   professional. However, numerous courts have concluded that even Section 329 does not apply

27

28

MAINDOCS-#220032-v3-ASR_App_Employ_Ford_Harrison.doc

1   when the services are unrelated to the bankruptcy proceeding.  Specifically, Section 329 applies to

2   an "attorney representing a debtor *in a case under this title, or in connection with such a case*…".

> (a) Any attorney representing a debtor *in a case under this title, or in connection with such a case*, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to--
> (1) the estate, if the property transferred--
> (A) would have been property of the estate; or
> (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
> (2) the entity that made such payment.

12  11 U.S.C.A. § 329 (emphasis added)

13      Courts have reasoned that if counsel is being employed by the debtor in connection with a

14  proceeding unrelated to the bankruptcy proceeding itself, then Section 329 does not apply.  For

15  example, upon rehearing for clarification in Matter of Hargis, 895 F.2d 1025, 1026 (5th Cir. 1990),

16  the Fifth Circuit noted that while 11 U.S.C. § 329 authorizes the bankruptcy court to review for

17  reasonableness all fees paid to counsel for services rendered in connection with a bankruptcy

18  proceeding, § 329 does not apply to services rendered that are unrelated to the bankruptcy

19  proceeding, and the bankruptcy court has no jurisdiction to review those fees.  Hargis, 895 F.2d

20  1025, 1026 (5th Cir.1990) ("We therefore hold that as to those services rendered by [counsel] that

21  were unrelated to the bankruptcy proceeding, section 329 does not apply, and [counsel] is entitled

22  to be paid in full for such services.")

23      The bankruptcy court, therefore, retains no jurisdiction over fees paid out of non-estate

24  assets to counsel with respect to proceedings unrelated to the bankruptcy.

> Section 329 of the Bankruptcy Code *generally* does not authorize the review of compensation for services unrelated to bankruptcy. *In re Keller Fin. Serv. Of Fla., Inc.*, 248 B.R. 859, 877 (Bankr.M.D.Fla.2000). Fees are subject to review if they are incurred for services "in contemplation of" a bankruptcy case, or if the services were rendered "in connection with" a bankruptcy case. *In re Keller*, 248 B.R. at 877. Legal services are "in connection with" a bankruptcy case "if it can be

objectively determined that the services rendered or to be rendered by the attorney have or will have an impact on the bankruptcy case." *In re Keller*, 248 B.R. at 878 (*citing In re Rheuban*, 121 B.R. 368, 378 (Bankr.C.D.Cal.1990); *In re Ostas*, 158 B.R. 312, 321–22 (N.D.N.Y.1993)).

In re Hackney, 347 B.R. 432, 442 (Bankr. M.D. Fla. 2006), order amended on reconsideration, 2006 WL 3804678 (Bankr. M.D. Fla. Sept. 26, 2006).  See also Roland v. Unum Life Ins. Co. of Am., 223 B.R. 499, 503 (E.D. Va. 1998) ("The bankruptcy court, therefore, retains no jurisdiction over fees paid out of non-estate assets to counsel in proceedings unrelated to the bankruptcy.") citing In re Walters, 868 F.2d 665, 667 (4th Cir.1989) ("Certain services by attorneys... are so unconnected to bankruptcy that a bankruptcy court is without jurisdiction to review them under § 329."); In re Campbell, 259 B.R. 615, 626 (Bankr. N.D. Ohio 2001) ("some legal services performed for a debtor while a bankruptcy is pending may be so unrelated to the bankruptcy case that they fall outside the scope of § 329"); In re Mills, 170 B.R. 404, 411 fn. 14 (Bankr. D. Ariz. 1994) ("Without doubt, unpaid prepetition attorneys fees unrelated to the bankruptcy are … are not regulated by Section 329.")

Here, the services are unrelated to the bankruptcy proceeding, because they do not impact the estate.  As set forth above, on October 22, 2016, the Court entered its *Order Granting Motion for Relief from the Automatic Stay* ("RFS Order") with respect to the Texas Action.  The RFS Order expressly provides that plaintiff in the Texas Action is permitted to enforce its final judgment only by: "Collecting upon any available insurance in accordance with applicable nonbankruptcy law. **Movant waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.**"  RFS Order, ¶ 5(a) (emphasis added).

Similarly, the Firm has represented that it will be paid by the applicable insurance carrier, and will not seek compensation from the bankruptcy estate.

Accordingly, the Texas Action is unrelated to the bankruptcy proceeding, and thus the Firm's compensation is not subject to review under Section 329.

MAINDOCS-#220032-v3-ASR_App_Employ_Ford_Harrison.doc

## III.

### NOTICE OF THE APPLICATION IS APPROPRIATE, AND NO FURTHER HEARING IN RESPECT OF THE APPLICATION IS REQUIRED, UNLESS SUCH HEARING IS ORDERED BY THIS COURT OR SPECIFICALLY REQUESTED BY A PARTY-IN-INTEREST

Notice of the relief requested by this Application has been provided to the U.S. Trustee; counsel for Petitioners; any creditor asserting a valid secured claim in this case or such creditor's counsel; counsel to the Committee; and upon those parties who request special notice in this case. Creditors and other parties-in-interest have been afforded an opportunity to object to this Application and to request a hearing on this Application, should they object to the relief requested herein. In accordance with the provisions of the Bankruptcy Rules, absent an objection to this Application, this Court can and should approve this Application without any hearing thereon.

## IV.

### CONCLUSION

Based upon the foregoing, ASR respectfully submits that good cause exists for this Court to authorize ASR to employ the Firm as its special litigation counsel in its Chapter 11 case on the terms and conditions set forth herein, and to authorize the Firm to obtain compensation of its fees and costs for sources outside the estate, i.e., the insurance carrier, without further order of the Court.

DATED: June 6, 2016

WINTHROP COUCHOT
PROFESSIONAL CORPORATION


By:___ */s/ Peter W. Lianides*_____
        Robert E. Opera
        Peter W. Lianides
        Andy Levin
General Insolvency Counsel for Debtor
and Debtor-in-Possession

### DECLARATION OF RACHEL ULLRICH

I, Rachel Z. Ullrich, declare and state as follows:

1.      I am an attorney and partner of the law firm, Ford Harrison LLP ("Firm"), and am authorized to make this declaration on behalf of the Firm.  I have personal knowledge of the facts set forth herein and, if called upon to testify, I could and would do so competently and truthfully.

2.      I make this declaration in support of the Application of Debtor and Debtor-in-Possession for Authority to Employ Ford Harrison LLP as its special litigation counsel in Texas ("Application") filed by American Spectrum Realty, Inc., the debtor and debtor-in-possession in this case ("Debtor").  I have reviewed the Application and, to the best of my knowledge, the factual representations contained therein regarding the Firm's representation of ASR are materially true and correct.[2]

3.      I am an attorney licensed to practice in the state of Texas.  I have been practicing law for approximately 19 years, and am admitted to practice and am in good standing before the Texas Supreme Court and the United States District Court for the Southern District of Texas. The Firm concentrates its practice in labor and employment litigation.

4.      I have extensive experience representing clients in jury trials, bench trials, arbitrations and a variety of administrative hearings (EEOC, Texas Workforce Commission, Department of Labor and other state and federal agencies). I also provide training and counseling services to clients in all areas of labor and employment law including employee discipline and terminations, medical leave and workplace accommodation issues, policy creation and implementation and creation and enforcement of restrictive covenants such as non-disclosure, non-solicitation and non-competition agreements.

5.      I have represented companies in a wide range of industries including retail, hospitality, oil & gas, automobile dealerships, assisted living, printing, insurance, manufacturing, aviation, technology and non-profit.

---

[2] Unless otherwise defined herein, the definitions of the capitalized terms contained herein are as set forth in the Application.

MAINDOCS-#220032-v3-ASR_App_Employ_Ford_Harrison.doc

**<u>Texas Action and Plaintiff's Waiver of Claims Against the Estate</u>**

6.      ASR seeks to employ the Firm to serve as ASR's litigation counsel in connection with certain litigation, entitled <u>Gus Anthony Eppolito, Jr. v. American Spectrum Realty, Inc., et.al.</u>, Case no. 2014-11428 ("Texas Action"), pending in 234th Civil District Court of Harris County, Texas ("Texas Court").  The plaintiff in the Texas Action was an officer of the Debtor and asserts a claim for wrongful termination.

7.      I am informed that on or about September 9, 2015, the plaintiff Eppolito filed a motion for relief from stay with respect to the Texas Action, docket no. 229.  On October 22, 2016, the Court entered its *Order Granting Motion for Relief from the Automatic Stay*, docket no. 267 ("RFS Order").  A copy of the RFS Order is attached hereto as exhibit 1 and incorporated herein by this reference.

**<u>Terms of Retention of the Firm</u>**

8.      The Firm specializes in all aspects of labor and employment law.  Rachel Ullrich will be the attorney primarily responsible for the representation of the Debtor in the Texas Action and is Counsel at Ford Harrison.  Rachel Ullrich has been a licensed Texas attorney since 1997 and is Board Certified in Labor and Employment Law by the Texas Board of Legal Specialization. Ms. Ullrich will be assisted in this matter by Allyn Lowell.  She is also Counsel at Ford Harrison.  Ms. Lowell has been a licensed Texas attorney since 2008 and is also licensed in Tennessee.  Mr. Aaron Zandy is the firm partner supervising Ms. Ullrich and Ms. Lowell on this matter.  Mr. Zandy is a licensed Florida attorney in the Firm's Orlando office.  A true and copy of the resumes of Ms. Ullrich and Ms. Lowell are attached hereto as Exhibit 2 and incorporated herein by this reference.

9.      It is my understanding that the Firm was paid $25,000 by the Debtor prior to the Petition Date.  This payment was for the retention amount ASR was responsible for under the insurance policy which covers the Texas Action. The Firm understands that its remaining fees and costs in the Texas Action are being paid by the Debtor's insurance carrier, and that the Firm does not intend to seek any further fees or costs from the Debtor or its estate.

1    10.    ASR and the Firm have agreed, subject to the Court's approval, to the terms of the

2  Firm's employment in this case.  These terms are set forth in the Representation Agreement

3  dated December 16, 2013 ("Representation Agreement"), entered into by and between ASR and

4  the Firm.  A true and complete copy of the Representation Agreement is attached hereto as

5  Exhibit 3 and incorporated herein by tis reference.

6    11.    ASR requires the services of the Firm to represent the Debtor in the Texas Action.

7  The Firm will provide the following services to the Debtor:

8    (c)    To represent ASR in Texas Action, as may be requested by ASR;

9    (d)    To take such other action and perform such other services as ASR may

10    require of the Firm in connection with the Texas Action.

11    12.    As set forth in the Ullrich Declaration, the Firm has received no other payments

12  or retainer from the Debtor.  The Firm's remaining fees and costs will be paid by the Debtor's

13  insurance carrier, and that the Firm does not intend to seek any further fees or costs from the

14  Debtor's estate.

15    **No Adverse Interest**

16    13.    The Firm has conducted a conflicts check with respect to the adverse parties in the

17  Texas Action.  The conflicts check indicates that the Firm has never represented any of such

18  parties.  To the best of the Firm's knowledge, the Firm has never represented any party in the

19  Texas Action, apart from the Debtor.

20    14.    To the best of the Firm's knowledge, neither the Firm nor any of its professionals

21  (i) was a creditor, an equity security holder, or an insider of ASR as of the Petition Date, or (ii) is

22  or was, within two years before the Petition Date, a director, officer or employee of ASR.

23    15.    The Firm has conducted a conflicts check with respect to twenty (20) largest

24  general unsecured creditors and the secured creditors listed in ASR's Schedules of Assets and

25  Liabilities.  The conflicts check indicates that the Firm has never represented any of such

26  creditors except Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins").  I am

27  informed that Allen Matkins filed proof of claim no. 79-1 against the bankruptcy estate in the

28  amount of $1,827.738.76, for unpaid fees and costs for legal services.

16.     In 2014, the Firm provided legal advice to Allen Matkins related to an acquisition in Illinois. Neither I, Ms. Lowell nor Mr. Zandy, were involved in the Firm's prior representation of Allen Matkins. I have contacted the attorney responsible for the representations of Allen Matkins, and based thereupon, I believe such representation was unrelated to the Debtor or the Texas Action. The Firm's representation of Allen Matkins was brief and no longer ongoing.

17.     The Firm believes that it does not hold or represent any interest materially adverse to the interests of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in ASR or for any other reason. The Firm believes also that it has no conflict that would impair the Firm's ability to perform professional services for ASR in accordance with Section 327 of the Bankruptcy Code.

18.     Based upon the foregoing, the Firm believes that it "does not represent or hold any interest adverse to the debtor or to the estate" with respect to the specified purpose of the proposed employment.

19.     None of the attorneys comprising or employed by the Firm is related to any judge of the United States Bankruptcy Court for the Central District of California, the U.S. Trustee, or to any person employed by the U.S. Trustee.

20.     The Firm has not agreed to share with any person or entity any compensation received by the Firm in ASR's case, except as among the members of the Firm and the attorneys who are of counsel to the Firm.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of June 2016, at Dallas, Texas.

Rachel Z. Ullrich

MAINDOCS-#220032-v3-ASR_App_Employ_Ford_Harrison.doc

1

## DECLARATION OF J. MICHAEL ISSA

2      I, J. Michael Issa, declare and state as follows:

3      1.      The matters set forth herein are within my own personal knowledge, and, if called

4  upon as a witness, I could and would competently testify thereto.

5      2.      I make this declaration in support of the Application of Debtor and Debtor-in-

6  Possession for Authority to Employ Ford Harrison LLP ("Firm") as its special litigation counsel

7  with respect to certain litigation pending in the state of Texas  ("Application") filed by American

8  Spectrum Realty, Inc., the debtor and debtor-in-possession in this case ("ASR").[3]

9      3.      I am a Principal of GlassRatner Advisory & Capital Group, LLC ("GlassRatner").

10  GlassRatner is a national, multi-office financial advisory services firm.  GlassRatner has

11  substantial experience providing advisory services to businesses that are experiencing financial

12  distress or that are in Chapter 11 proceedings.  GlassRatner has a national reputation in the area

13  of bankruptcy and restructure advisory services and, over the past several years, GlassRatner has

14  advised lenders and borrowers on more than $20.0 billion face value of debt in one form or

15  another of distress or restructure.

16      4.      I am a Certified Public Accountant, and I have more than 30 years' experience in

17  bankruptcy consulting, debt and financial restructuring, forensic accounting, acquisition due

18  diligence, litigation support and public accounting.  I have been the lead professional on

19  numerous high-profile and complex engagements, including engagements providing financial

20  restructuring and reorganization services to companies in Chapter 11 cases and out-of-court

21  restructurings, and to creditors of companies in Chapter 11 cases.  I have served as a chief

22  restructuring officer in a number of Chapter 11 cases, and have served as a court-appointed

23  liquidating trustee and as a Chapter 11 trustee.

24      5.      I have extensive experience providing crisis management and financial

25  restructuring services for real estate clients.  I have substantial experience and knowledge

26

27  [3] Unless otherwise defined herein, the definitions of the capitalized terms contained herein are as set forth in the
28  Application.

1   regarding restructuring of complex real estate transactions and disposition of real estate projects.

2   I personally have managed several billion dollars of debt restructurings on behalf of real estate

3   clients.

4       6.    ASR is a real estate investment company that owns, through its subsidiaries and

5   affiliates, interests in office, industrial, self-storage, residential, retail and apartment properties

6   throughout the United States.  ASR has been a publicly-traded company since 2001 and its

7   shares commenced trading on the New York Stock Exchange in or about 2002.

8       7.    On May 1, 2015, in accordance with an order of the Bankruptcy Court, I was

9   appointed to act as Chief Restructuring Officer ("CRO") of ASR.  I replaced an interim

10   Chapter 11 trustee that had previously been appointed to ASR's case by the Bankruptcy Court.

11       8.    ASR has interests, directly or through subsidiaries, in about forty-five (45)

12   affiliated entities.  ASR, through subsidiaries and affiliates, has ownership interests in about

13   twelve (12) real properties with a gross value that I estimate to be approximately $68.0 to $70.0

14   million.  ASR, through its subsidiary, American Spectrum Realty Management, LLC ("ASRM"),

15   manages or managed approximately thirty-four (34) properties.  ASRM also provides

16   receivership and real property disposition services.

17       9.    I have reviewed the Application.  I believe that the representations contained

18   therein regarding ASR's operations are materially accurate.

19       10.   ASR supports the retention of the Firm in accordance with the provisions of the

20   Application.

21       I declare under penalty of perjury under the laws of the State of California and the United

22   States of America that the foregoing is true and correct to the best of my knowledge.

23       Executed this 3th day of June 2016, at Irvine, California.

24

25

26                                  J. Michael Issa

27

28

**Exhibit "1"**

Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address

**W. CRAFT HUGHES**
Texas Bar No. 24046123
craft@hughesellzey.com
HUGHES ELLZEY, LLP
2700 Post Oak Blvd., Ste. 1120
Houston, TX 77056
Telephone (888) 350-3931
Facsimile (888) 995-3335

FOR COURT USE ONLY

**FILED & ENTERED**

**OCT 22 2015**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY nbolte    DEPUTY CLERK

☐ *Movant appearing without an attorney*
☒ *Attorney for Movant*

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

In re:

American Spectrum Realty, Inc.,

CASE NO.: 8:15-bk-10721-SC

CHAPTER: 11

**ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**

**(Action in Nonbankruptcy Forum)**

DATE: October 15, 2015
TIME: 11:00 a.m.
COURTROOM: 5C
PLACE: 411 West Fourth Street,
Santa Ana, CA 92701

Debtor(s).

**MOVANT:** Gus Anthony Eppolito, Jr.

1. The Motion was:    ☐ Opposed    ☒ Unopposed    ☒ Settled by stipulation

2. The Motion affects the following Nonbankruptcy Action:

   Name of Nonbankruptcy Action: Gus Anthony Eppolito, Jr. v. American Spectrum Realty, Inc.

   Docket number: 2014-11428

   Nonbankruptcy court or agency where the Nonbankruptcy Action is pending:
   234th Civil District Court of Harris County, Texas

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

3.  The Motion is granted under 11 U.S.C. § 362(d)(1).

4.  As to Movant, its successors, transferees and assigns, the stay of 11 U.S.C. § 362(a) is:

    a.  ☐  Terminated as to the Debtor and the Debtor's bankruptcy estate.

    b.  ☐  Modified or conditioned as set forth in Exhibit _____ to the Motion.

    c.  ☒  Annulled retroactively to the bankruptcy petition date. Any postpetition acts taken by Movant to enforce its
            remedies regarding the nonbankruptcy action do not constitute a violation of the stay.

5.  **Limitations on Enforcement of Judgment:**  Movant may proceed in the nonbankruptcy forum to final judgment
    (including any appeals) in accordance with applicable nonbankruptcy law.  Movant is permitted to enforce its final
    judgment only by *(specify all that apply)*:

    a.  ☒  Collecting upon any available insurance in accordance with applicable nonbankruptcy law.  Movant waives
            any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.

    b.  ☐  Proceeding against the Debtor as to property or earnings that are not property of this bankruptcy estate.

6.  This order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter
    of the Bankruptcy Code.

7.  ☐  The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on
        the same terms and conditions as to the Debtor.

8.  ☐  The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

9.  ☐  This order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of
        180 days, so that no further automatic stay shall arise in that case as to the nonbankruptcy action.

10. ☐  This order is binding and effective in any future bankruptcy case, no matter who the debtor may be, without
        further notice.

11. ☐  Other *(specify)*:

                                                    ###

                                                                                                            .

Date: October 22, 2015                          _____
                                                Scott C. Clarkson
                                                United States Bankruptcy Judge

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                 Page 2                          **F 4001-1.RFS.NONBK.ORDER**

                                                                            Exhibit 1, Page 23

**Exhibit "2"**



**lus Laboris** UNITED STATES
**FORDHARRISON**



# Rachel Ziolkowski Ullrich
Counsel

rullrich@fordharrison.com
P: 214.256.4712
F: 214.256.4701

**Dallas Office**
1601 Elm Street, Suite 4450
Dallas, Texas 75201

Rachel Ziolkowski Ullrich is Board Certified in Labor and Employment Law by the Texas Board of Legal Specialization, with nearly 20 years' experience in employment and commercial litigation.

Rachel has extensive experience representing clients in jury trials, bench trials, arbitrations and a variety of administrative hearings (EEOC, Texas Workforce Commission, Department of Labor and other state and federal agencies). She also provides training and counseling services to clients in all areas of labor and employment law including employee discipline and terminations, medical leave and workplace accommodation issues, policy creation and implementation and creation and enforcement of restrictive covenants such as non-disclosure, non-solicitation and non-competition agreements.

Rachel has represented companies in a wide range of industries including retail, hospitality, oil & gas, automobile dealerships, assisted living, printing, insurance, manufacturing, aviation, technology and non-profit.

**Recent Experience**

- Extensive trial and arbitration experience, most recently having tried a reverse discrimination case on behalf of a major Dallas employer to a unanimous defense verdict.
- Represented clients in complex employment disputes alleging discrimination, retaliation, and harassment, including drafting and filing motions and pleadings in state and federal court.
- Represented clients before federal and state administrative agencies such as the EEOC and the Texas Workforce Commission, including responding to EEOC complaints and drafting position statements.
- Represented clients before the Department of Labor in wage and hour investigations conducted by the Department.
- Represented clients in wage and hour collective actions claims.
- Provides counseling and advice to clients on reductions in force and other termination issues.

**Honors and Awards**

- "Texas Rising Stars," *Super Lawyers* magazine

Exhibit 2, Page 24


Ius Laboris UNITED STATES
**FORDHARRISON**

**Practices**
- Class Actions
- Employment Law
- Hospitality
- Litigation
- Restaurants
- Retail
- Wage/Hour

**Bar Admissions**
- Texas

**Education**
- University of Houston Law Center
  J.D., 1997
- University of Houston
  B.S., *magna cum laude*, 1994

**Memberships**
- American Bar Association
- Texas Bar Association
- Dallas Bar Association, Employment Law Section
- Lupus Foundation of America, Lone Star Chapter Chairman (2015), Board Member (2012 to present), and Vice Chair (2014)
- Chefs for Farmers, Committee Member



**Ius Laboris** UNITED STATES
# FORDHARRISON



## Allyn Jaqua Lowell
Counsel

alowell@fordharrison.com
P: 214-256-4703
F: 214-256-4701

**Dallas Office**
1601 Elm Street, Suite 4450
Dallas, Texas 75201

Allyn Lowell represents employers in federal and state employment litigation matters.

Her litigation experience includes conducting fact investigation, managing discovery, drafting and arguing motions and handling mediations. She also assists in all phases of labor relations including investigation and defense of unfair labor practice charges, pre-election supervisor training and drafting post-hearing arbitration briefs.

During law school, Allyn was awarded the CALI Award for Excellence in both Employment Law and Alternative Dispute Resolution for Labor Law.

**Recent Experience**

- Achieved judgment as a matter of law as lead counsel in federal bench trial of Texas state contract claims
- Successfully argued and achieved summary judgments in a defamation case and a pregnancy discrimination case
- Successfully represented employer on appeal to Sixth Circuit in race discrimination case
- Successfully represented national retailer in having injunctions enforced against former employee for defamation
- Achieved dismissal of ERISA lawsuit on behalf of national employer
- Conducted comprehensive sex harassment training for all of client's Dallas facilities
- Achieved dismissal of numerous EEOC charges in Texas and Tennessee

**Recent Publications**

- Editor, Texas Chapter for *50 Employment Laws in 50 States*, published by HR Hero

**Honors and Awards**

- "Texas Rising Stars," *Super Lawyers* magazine

**Practices**



- Airlines
- Employment Law

**Bar Admissions**
- Tennessee
- Texas

**Education**
- University of Memphis School of Law
  J.D., *cum laude*, 2006
- Wake Forest University
  B.A., 2002

**Memberships**
- American Bar Association
- Texas Bar Association
- Tennessee Bar Association
- Dallas Bar Association
- Dallas Association of Young Lawyers
- Society for Human Resource Management
- Association of Women Attorneys

**Exhibit "3"**

# FORD**HARRISON**<sup>LLP</sup>

——————————— ATTORNEYS AT LAW ———————————

300 South Orange Avenue • Suite 1300
Orlando, Florida 32801
Tel 407.418.2300 • Fax 407.418.2327
www.fordharrison.com

Writer's Direct Contact:

December 16, 2013

AARON L. ZANDY
(407) 418-2304
azandy@fordharrison.com

**VIA U.S. MAIL**

Matthew V. Thornton
President
American Spectrum Risk and Insurance Services, LLC
19100 Von Karman Avenue, Suite 900
Irvine, CA 92612

Re:    Engagement of Ford & Harrison LLP
       *Gus Anthony Eppolito, Jr. v. American Spectrum Realty*

Dear Mr. Thornton:

We are delighted that you have engaged the services of Ford & Harrison LLP to represent American Spectrum Realty. Under your guidance, we will do our utmost to provide you and American Spectrum Realty at all times with the highest level of professional legal services and counseling. While we can never guarantee the success of any given venture, we will always strive to represent and protect the interests of you and American Spectrum Realty to the best of our abilities.

This letter outlines the basis on which our firm provides legal services, the invoicing process for our services, and any expenses incurred on your behalf, and how we maintain and administer our general billing procedures. Vista Lyons will have the overall responsibility for the firm's representation of American Spectrum Realty and will work with other attorneys and paralegals (as necessary) to provide qualified, comprehensive, and cost-effective legal representation. Vista will assign case responsibilities and tasks based on the degree of experience and expertise required for a particular component of your defense. Based on our negotiated preferred rates with Beazley Insurance, partners' hourly rates will be $250.00, associates' hourly rates will be $210.00, and paralegals' hourly rates will be $90.00. I will have overall responsibility for billing issues. I can be reached at (407) 418-2304 (direct dial) or azandy@fordharrison.com and my legal assistant is Lorraine Kyser and she can be reached at (407) 418-2308 (direct dial) or lkyser@fordharrison.com.

With respect to any services we may provide, we will furnish itemized statements on a monthly basis, to include all necessary and reasonable expenses incurred and disbursements made by us in the performance of such services, including expenses for any courier and express services, copying, travel, court costs, court reporter fees and other expenses. Unlike many firms, we do not bill for long distance telephone expense or computerized research services. In

Exhibit 3, Page 28

Matthew V. Thornton
December 16, 2013
Page 2

addition to our legal services, we bill our clients for all costs advanced and expenses incurred on their behalf. We will advance and pay invoices or statements for all minor or incidental costs, such as depositions, *etc.*, under $500.00. Any invoices or statements that are in excess of this amount will normally be sent directly to you for payment. We expect that all statements will be timely paid upon receipt, but no later than thirty (30) days following receipt. *We will send all invoices directly to you (with a copy to Beazley Insurance) until your insurance deductible is satisfied, at which time we will send the remaining invoices directly to Beazley Insurance for payment.*

With new clients in matters of this type, we require a prepaid fee of $10,000.00. Upon receipt of the prepaid fee, it will be deposited in the trust account maintained in our Orlando office. The prepaid fee shall be applied against the final statement for our services in this case and any unused balance will be refunded to you. However, in the event any of our bills remain unpaid for more than fifteen (15) days after issuance, we may, at our discretion and on written notice to you, transfer funds from our trust account to our firm's regular operating account sufficient to pay the outstanding unpaid bill(s). On receipt of such notice, you agree to replenish the prepaid fee, within ten (10) days, to restore it to $10,000.00. If you fail to maintain the prepaid fee at $10,000.00 on a timely basis, we reserve the right to withdraw from our representation of you. Unless directed otherwise, our contact will be directly with you. If you desire any change in this procedure, please advise us, preferably in writing. If you ever have any questions concerning our invoices, please contact me immediately.

American Spectrum Realty will have the right to terminate our representation at any time and for any reason without prior notice, subject to payment for all services and expenses rendered to the date of termination. We retain the same right, and, further, we may discontinue legal services if invoices are not paid timely.

If the foregoing is acceptable, please sign and date the brief acknowledgement that appears at the end of this letter and return it to me so that we may document our file as to this agreement. If you have any questions or concerns about our representation, please contact me immediately.

We are honored you have selected our firm to represent American Spectrum Realty and look forward to working with you. We value all of our clients and seek to establish long-term relationships by good counsel, practical advice and effective representation.

Sincerely,

*Aaron L Zandy*

AARON L. ZANDY

Enclosures

Matthew V. Thornton
December 16, 2013
Page 3

## ACKNOWLEDGEMENT AND AGREEMENT

The undersigned, on behalf of American Spectrum Realty has read the foregoing representation agreement and agrees to the terms set forth therein.


American Spectrum Realty


Date:_____          By:_____

                                          Matthew V. Thornton
                                          President


Orlando 221134.1

# FORD**HARRISON**LLP

271 17th Street, NW  •  Suite 1900  •  Atlanta, Georgia 30363
Tel 404.888.3800  •  Fax 404.888.3863
www.fordharrison.com

December 16, 2013

**PRIVILEGED & CONFIDENTIAL**

Matthew V. Thornton
President
American Spectrum Risk and Insurance Services, LLC
19100 Von Karman Avenue, Suite 900
Irvine, CA 92612

Attention:    Matthew V. Thornton, President

TAX I.D. 58-1314995

American Spectrum Realty/Gus Anthony , Jr. v. American Spectrum Realty

PREPAID FEE.................................................................................. $      $10,000.00}

Please remit this copy with your payment to:

Ford & Harrison LLP
Attention: Aaron L. Zandy
300 South Orange Avenue
Suite 1300
Orlando, FL 32801

**FHPROMISE** | We will make your job easier • We will know your business and needs • We will be proactive and accessible

We will manage your costs like our own • We will use our best resources to provide cost-effective, quality work product

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled:  **APPLICATION OF DEBTOR AND DEBTOR-IN-POSSESSION TO EMPLOY FORD HARRISON LLP AS ITS SPECIAL LITIGATION COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF RACHEL Z. ULLRICH IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On June 6, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On _____, 2015, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 6, 2016, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Via Attorney Service - Bin beside 5th floor elevators**
Honorable Scott C. Clarkson
Ronald Reagan Federal Bldg.
411 W. Fourth St.
Santa Ana, CA 92701

CRO: J. Michael Issa: missa@glassratner.com

Applicant:  Rachel Ullrich - rullrich@fordharrison.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 6, 2016 | Melody Conour | /s/ Melody Conour |
|---|---|---|
| Date | Printed Name | Signature |

## NEF SERVICE LIST

- Leslie Schwaebe Akins    lsa@stockmarketlaw.com, vs@stockmarketlaw.com;aks@stockmarketlaw.com
- Elizabeth Basden    eli@basdenlaw.com, andrew@basdenlaw.com
- Robert D Bass    rbass@greenbass.com, mkerpik@greenbass.com;ecfnotification@greenbass.com
- James C Bastian    jbastian@shbllp.com
- Reem J Bello    rbello@wgllp.com, kadele@wgllp.com;lfisk@wgllp.com;tziemann@wgllp.com
- Martin J Brill    mjb@lnbrb.com
- Martin J Brill    mjb@lnbyb.com
- Steve A Buchwalter      , buchwalt@pacbell.net
- Michael J Bujold    Michael.J.Bujold@usdoj.gov
- Frank Cadigan    frank.cadigan@usdoj.gov
- Alexandre I Cornelius    aicornelius@costell-law.com, jgalliver@costell-law.com;mharris@costell-law.com;cevans@costell-law.com;ladelson@costell-law.com;jlcostell@costell-law.com
- Douglas A Daniels    douglas.daniels@danielsgentle.com, elizabeth.miller@danielsgentle.com;jeremy.williams@danielsgentle.com
- Sean B Davis    sbdavis@winstead.com, sbdavis@winstead.com;jhebert@winstead.com
- Robert H Dewberry    robert.dewberry@dewlaw.net
- Lei Lei Wang Ekvall    lekvall@swelawfirm.com, csheets@swelawfirm.com;gcruz@swelawfirm.com;hdavis@swelawfirm.com
- Marjorie A Elken    melken@zrlawgroup.com, cstinson@zrlawgroup.com
- Richard L Fuqua    fuqua@fuquakeim.com
- Anton Gerschler    anton@northcountylawfirm.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- Jeffrey I Golden    jgolden@wgllp.com, kadele@wgllp.com;lfisk@wgllp.com;tziemann@wgllp.com
- Carl Grumer    cgrumer@manatt.com, bruiz@manatt.com
- Cristina A Guido    cguido@swelawfirm.com, csheets@swelawfirm.com;gcruz@swelawfirm.com;hdavis@swelawfirm.com
- Brian P Holmes    bholmes@gersonlaw.com
- William C Hughes    craft@hughesellzey.com
- James K Katzaroff    kkatzaroff@zrlawgroup.com, dmiller@zrlawgroup.com
- Leib M Lerner    leib.lerner@alston.com
- Andrew B Levin    alevin@winthropcouchot.com, bayrelevin@hotmail.com;pj@winthropcouchot.com;mconour@winthropcouchot.com;vcorbin@winthropcouchot.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com;rchavez@winthropcouchot.com
- Melissa Davis Lowe    mdavis@shbllp.com, sswartzell@shbllp.com
- Hal M Mersel    mark.mersel@bryancave.com, ginny.hamel@bryancave.com
- Susan I Montgomery    susan@simontgomerylaw.com, assistant@simontgomerylaw.com;simontgomerylawecf.com@gmail.com
- Kevin J. Moore    Kmoore@kjmlaw.com, ddoitch@kjmlaw.com
- Sarah D Moyed    moyeds@sec.gov

1
- Ryan D ODea    rodea@shbllp.com, sswartzell@shbllp.com
- Robert E Opera    ropera@winthropcouchot.com,

2
  pj@winthropcouchot.com;vcorbin@winthropcouchot.com;mconour@winthropcouchot.co
  m;rchavez@winthropcouchot.com

3
- Ronak Patel    rpatel@co.riverside.ca.us, mdominguez@co.riverside.ca.us
- Jeffrey R Patterson    jpatterson@allenmatkins.com, csandoval@allenmatkins.com

4
- Amelia Puertas-Samara    itcdbgc@edd.ca.gov, itcdgc@edd.ca.gov
- Daniel H Reiss    dhr@lnbyb.com, dhr@ecf.inforuptcy.com

5
- Todd C. Ringstad    becky@ringstadlaw.com

6
- Lorraine M Sarles    lorraine.sarles@alston.com
- Melody T Scullary    Melody.Scullary@ftb.ca.gov, Martha.Gehrig@ftb.ca.gov

7
- Randye B Soref    rsoref@polsinelli.com
- Tamar Terzian    terzian@kingobk.com, cynthia@kingobk.com

8
- James E Till    jtill@btntlaw.com

9
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Reed S Waddell    rwaddell@frandzel.com, efiling@frandzel.com;sking@frandzel.com

10
- Kimberly Walsh    bk-kwalsh@texasattorneygeneral.gov
- Craig A Welin    cwelin@frandzel.com, efiling@frandzel.com;bwilson@frandzel.com

11
- Scott S Weltman    colcaecf@weltman.com
- Jeffrey C Wisler    jwisler@connollygallagher.com, dperkins@connollygallagher.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MAINDOCS-#220032-v3-ASR_App_Employ_Ford_Harrison.doc